FILED
United States Court of Appeals
Tenth Circuit

November 8, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARK TUCKEL,

      Plaintiff–Appellant,

v.

MAJOR GROVER; STEVE KEYS,

      Defendants–Appellees.

No. 10-1353

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:10-CV-00215-KLM-MEH)**

Bill C. Berger, Brownstein Hyatt Farber Schreck, LLP, Denver, Colorado, for Plaintiff-Appellant.

Jennifer Susan Huss, (John W. Suthers, Attorney General, with her on the brief) Office of the Attorney General for the State of Colorado, Denver, Colorado, for Defendants-Appellees.

Before **LUCERO**, **MATHESON**, Circuit Judges, and **FREUDENTHAL**, District Judge.[*]

---

[*] The Honorable Nancy D. Freudenthal, District Judge of the United States District Court for the District of Wyoming, sitting by designation.

**LUCERO**, Circuit Judge.

Mark Tuckel, an inmate in state prison in Crowley, Colorado, filed a 42 U.S.C. § 1983 lawsuit against two prison officials. In his suit, Tuckel averred that he was beaten in retaliation for submitting a complaint through the prison grievance system. The district court granted summary judgment in favor of the defendants, finding that Tuckel had failed to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). We hold that a plaintiff with an objectively reasonable fear of retaliation from prison officials may show that administrative remedies were unavailable to him and thereby be excused from exhausting such remedies. Because there are disputed issues of fact about the availability of administrative remedies to Tuckel, we reverse and remand.

**I**

Tuckel held a job in vehicle maintenance while serving a sentence at the Arkansas Valley Correction Facility ("AVCF"). Unsatisfied with his position, Tuckel allegedly struck a deal with Scott Grover, a prison official. Under the claimed agreement, Grover would see that Tuckel was transferred to a vocational program if Tuckel completed a welding project. Upon completion of the project, however, Grover denied the existence of the agreement. Tuckel subsequently filed a complaint through the prison grievance system.

After filing his grievance, Tuckel was approached by several inmates and informed that Scott Keys, who managed a program at the prison, told them that his grievance had resulted in their loss of incentive pay. At the apparent recommendation of Grover and other officials, the inmates proceeded to assault Tuckel, causing severe damage to his eye. Rather than bringing another grievance, Tuckel filed a § 1983 claim in district court, alleging violations of his First and Eighth Amendment rights.[1]

Invoking the PLRA, defendants moved for summary judgment on the ground that Tuckel failed to exhaust his administrative remedies. Despite Tuckel's protests that he did not exhaust because he feared further retaliation, the district court granted the defendants' motion. Tuckel now appeals.

## II

"We review summary judgment decisions de novo, applying the same legal standard as the district court." Willis v. Bender, 596 F.3d 1244, 1253 (10th Cir. 2010) (quotation omitted). In our analysis, we must view evidence in the light most favorable to the non-moving party. McCarty v. Gilchrist, 646 F.3d 1281, 1284 (10th Cir. 2011). "Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Id. at 1285 (quotation omitted).

The district court granted summary judgment against Tuckel based solely on its

---

[1] Although Tuckel specifically alleged only an Eighth Amendment violation in his complaint, the magistrate judge, in recognition of Tuckel's pro se status, determined that his allegations also implicated a First Amendment retaliation claim.

determination that the PLRA requires exhaustion regardless of a prisoner's legitimate fear of retaliation. There is no dispute as to whether Tuckel exhausted the remedies provided in the Colorado Department of Corrections ("CDOC") regulations; he concedes that he did not. We are thus faced squarely with the task of interpreting the PLRA, and specifically, the scope of its exhaustion provision.

**A**

Any exercise in statutory interpretation must begin with an examination of the plain language at issue. United States v. Sprenger, 625 F.3d 1305, 1307 (10th Cir. 2010). Congress enacted the PLRA to reduce the "disruptive tide of frivolous prisoner litigation." Woodford v. Ngo, 548 U.S. 81, 97 (2006). To achieve this end, the statute includes an "invigorated" exhaustion provision, which provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The Supreme Court recently reaffirmed that the PLRA's exhaustion requirement is mandatory. Woodford, 548 U.S. at 84. But we need not determine whether an exception to this requirement is appropriate here. Instead, we must decide if the exhaustion requirement, by its own terms, supports the district court's grant of summary judgment. We hold that it does not, and join three of our sibling circuits in concluding that intimidation or threats by prison officials can render an administrative remedy

unavailable under the PLRA's exhaustion provision.

**B**

The plain language of the PLRA requires that prisoners exhaust only <u>available</u> remedies. 42 U.S.C. § 1997e(a) ("No action shall be brought . . . until such administrative remedies <u>as are available</u> are exhausted." (emphasis added)). It follows that if an administrative remedy is not available, then an inmate cannot be required to exhaust it. Because the statute does not explicitly define the term "available," we must adopt its ordinary meaning. <u>Gross v. FBL Fin. Servs., Inc.</u>, 129 S. Ct. 2343, 2350 (2009). To be "available," a remedy must be "capable of use for the accomplishment of a purpose." <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 737 (2001) (citing Webster's Third New Int'l Dictionary 150 (1993)).

Our circuit has previously recognized that an administrative remedy is not "available" under the PLRA if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy." <u>Little v. Jones</u>, 607 F.3d 1245, 1250 (10th Cir. 2010); <u>see also</u> <u>Jernigan v. Stuchell</u>, 304 F.3d 1030, 1032 (10th Cir. 2002) (holding that a prison official's failure to respond to a grievance within prescribed time limit renders an administrative remedy unavailable). Based on this principle, we have obligated district courts "to ensure that any defects in exhaustion [are] not procured from the action or inaction of prison officials." <u>Aquilar-Avellaveda v. Terrell</u>, 478 F.3d 1223, 1225 (10th Cir. 2007).

In light of our precedent, we find it difficult to accept the proposition that an

-5-

administrative remedy is available in any meaningful sense if its use will result in serious retaliation and bodily harm. We therefore conclude that when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be "available."

In so holding, we join the Second, Seventh, and Eleventh Circuits. See Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Step, 458 F.3d 678, 683-86 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004); see also Verbanik v. Harlow, No. 10-2522, 2011 WL 3488979, at *2 (3d Cir. Aug. 11, 2011) (per curiam) (unpublished) (holding the same in a non-precedential opinion). Faced with claims similar to Tuckel's, these courts have uniformly held that "some threats disrupt the operation and frustrate the purposes of the administrative remedies process enough that the PLRA's exhaustion requirement does not allow them." Turner, 541 F.3d at 1085; see also, Kaba, 458 F.3d at 686 ("The attack itself may have transformed the remedies from available to unavailable."); Hemphill, 380 F.3d at 688 ("[S]ome circumstances may render seemingly accessible remedies, in fact, unavailable."). We agree that this is the most logical reading of the statute.

Although we need not reach beyond the statute's text, we note that our interpretation is faithful to the underlying purposes of the PLRA. As the Eleventh Circuit explained in Turner, when "an inmate forgoes administrative remedies because prison officials have made it irrational for him to pursue them, the inmate loses a benefit that

Congress intended to bestow on him."[2] 541 F.3d at 1077. Without venturing into the realm of guesswork, we are confident that Congress did not intend the exhaustion requirement to summarily prevent inmates from vindicating their constitutional rights. See Brown v. Plata, 131 S.Ct. 1910, 1937 (2011) ("Courts should presume that . . . Congress did not leave prisoners without a remedy for violations of their constitutional rights.").

## C

Having established that threats or intimidation by prison officials can render an administrative remedy unavailable, we must consider the showing necessary to defeat a failure-to-exhaust defense. Our out of circuit colleagues have adopted somewhat differing standards with respect to the showing a plaintiff must make to establish that remedies are unavailable. The Second Circuit was the first to address this issue, and determined that the test "must be an objective one." Hemphill, 380 F.3d at 688. Specifically, the court considered whether a "similarly situated individual of ordinary firmness" would consider administrative remedies to be available.[3] Id. A similar test

---

[2] The Turner court further reasoned that allowing inmates faced with threats to bring suit in court would promote accountability among prison officials and deter abusive behavior. See 541 F.3d at 1085. We agree that accountability and deterrence may be positive side effects of our decision, but absent evidence that such effects were contemplated by Congress in passing the PLRA, we base our interpretation solely on the statute's plain text.

[3] The Second Circuit also announced a theory of estoppel to prevent abusive prison officials from asserting exhaustion as an affirmative defense and a catch-all

Continued . . .

seems to have been adopted by the Seventh Circuit, albeit implicitly. Kaba, 458 F.3d at

684 ("While we have not laid out a particular test for deciding when administrative

remedies become unavailable, the Second Circuit has opted for an objective test . . . ."").

Finally, the Eleventh Circuit settled on a clear two-prong analysis in Turner. 541 F.3d at

1085. Under this analysis, a court must determine if the plaintiff was subjectively

deterred in addition to the objective inquiry utilized by the other circuits. Id.

After considering these various tests, we conclude that the Eleventh Circuit's

analysis in Turner serves as the best model. See Turner, 541 F.3d at 1085. Accordingly,

we hold that an inmate must make two showings: (1) that the threat or intimidation

actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular

part of the prison administrative process; and (2) that the threat or intimidation would

deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or

pursuing the part of the prison administrative process that the inmate failed to exhaust.

The first showing is subjective; the inmate must show that he was actually

deterred. The second is an objective one, requiring the district court to consider the

context of the alleged threat or intimidation. For example, a threat that was allegedly

"special circumstances" exception to the PLRA exhaustion requirement. See Hemphill, 380 F.3d at 686. We have previously considered the applicability of estoppel in the PLRA framework, and reserved the issue for another day. See Jernigan, 304 F.3d at 1033. Confronted with it once more, we again conclude it is unnecessary to decide the issue. Our determination that the district court erred in granting summary judgment is unaffected by Tuckel's ability to estop the defendants from setting up an exhaustion defense. Similarly, we need not address the existence of a "special circumstances" exception in this case.

made years prior to the inmate's suit may fail to render administrative remedies unavailable. The same is true if an inmate is no longer held in the prison in which he experienced retaliatory violence. This objective element ensures that inmates cannot easily circumvent the exhaustion requirement, and provides district courts with a means of quickly filtering out frivolous claims. Only threats that are sufficiently serious and retaliatory acts that are severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes.

As a result, not all—or even most—First Amendment retaliation claims involving the grievance process will be exempt from exhaustion. Such claims do, however, add an additional layer of complexity. The merits of a First Amendment retaliation claim, such as the one brought by Tuckel, may overlap with the objective prong of our test. See Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007) (requiring a plaintiff asserting a First Amendment retaliation claim to show, inter alia, "that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"). Nevertheless, demonstrating that an official objectively chilled an inmate from relying on administrative remedies presents a significant challenge in any context. As such, there is little incentive for an inmate to assert baseless retaliation claims rather than simply utilizing a grievance procedure.

Failure to exhaust under the PLRA is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Defendants thus bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies. Id. Once a defendant proves that a

plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials. Plaintiffs should be afforded an opportunity to counter the exhaustion defense in this manner regardless of whether the issue is asserted by defendants or raised by the court sua sponte. See Aquilar-Avellaveda, 478 F.3d at 1225.

**D**

In reaching our conclusion, we necessarily reject the defendants' arguments that our holding conflicts with the Supreme Court's decision in Woodford. In that case, the Supreme Court confirmed that an inmate must comply with the procedural rules dictated by an administrative grievance system. Woodford, 548 U.S. at 102-03. Defendants point to language in Woodford indicating that exhaustion under the PLRA "is no longer left to the discretion of the district court." 548 U.S. at 85. But this language does not support the defendants' position. Throughout Woodford, the Court is careful to acknowledge that the PLRA's exhaustion requirement applies only to "available" remedies. Id. at 84. Our holding concerns when remedies are available; it does not give discretion to fabricate exceptions to the requirement that inmates exhaust available remedies. The Seventh and Eleventh Circuits apparently reached similar conclusions in Turner and Kaba, both of which were decided after Woodford.

Defendants' argument that Tuckel should have filed an emergency grievance prior to bringing suit also lacks merit. Under CDOC regulations, an inmate may file an emergency grievance when irreparable harm is imminent. Colo. Dept. Corrections

-10-

Admin. Reg. 850-04(IV)(I)(1). Once filed, an emergency grievance bypasses the normal channels of review and may immediately be forwarded to the warden or other head administrative official within the prison. Id. Defendants contend that the existence of this procedure should allay any fear of retaliation inmates might have about using the regular grievance procedures. We disagree.

An inmate who has been threatened or beaten for using administrative procedures has no reason to expect that an emergency grievance procedure, by virtue of being expedited, is somehow different and will not result in retaliation. If anything, an expedited procedure could be construed as hastening the retaliation an inmate might suffer. Nor does the potential that an emergency grievance will be forwarded to the warden necessarily ensure that an inmate will not be harmed. In some instances,[4] a warden may refuse or be unable to protect a prisoner from retaliation by lower prison officials. Further, even with an emergency procedure in place, it is unclear where an inmate faced with threats by the warden or other ranking prison official can turn for redress.

We are thus not persuaded that the CDOC emergency procedure eliminates an inmate's fear of retaliation. In reaching this determination, we once more align ourselves with the other circuits that have contemplated this issue. See Turner, 541 F.3d at 1083-84

---

[4] The plaintiff in Kaba was attacked in his cell after he specifically informed his prison's warden of the threats made against him. 458 F.3d at 682-83.

(rejecting the argument that the plaintiff "should have filed an emergency grievance"); see also Kaba, 458 F.3d at 681-82 (acknowledging that there was a special grievance procedure in place, but according it no consideration in the analysis).

### III

The district court granted the defendants' motion for summary judgment on the basis of exhaustion before Tuckel had a meaningful opportunity to gather evidence concerning his alleged fear of retaliation. As a result, the record on appeal does not reveal whether Tuckel can make an adequate showing that the alleged intimidation by defendants rendered administrative remedies unavailable to him.

Given the sparse record and the disputed factual issues concerning the objective reasonableness of Tuckel's fear of retaliation, the judgment of the district court is **VACATED** and the case is **REMANDED** for further proceedings consistent with this opinion.