**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 17, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JEFF BROSH; JOHN COON,

     Plaintiffs - Appellants,

v.

LINDA DUKE, in her individual capacity,

    Defendant - Appellee.

No. 14-1396
(D.C. No. 1:12-CV-00337-RM-MJW)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **McKAY** and **PHILLIPS**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is, therefore,

submitted without oral argument.

Plaintiffs Jeff Brosh and John Coon, both former inmates at the Fremont

Correctional Facility (FCF) in Canon City, Colorado, appeal from the district court's

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

grant of summary judgment on their 42 U.S.C. § 1983 claims against defendant Linda Duke, an FCF guard who allegedly violated their Eighth Amendment rights by closing them inside of a walk-in refrigerator for a brief period of time. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's grant of summary judgment in favor of Duke.

I

We construe the summary judgment record in the light most favorable to Brosh and Coon as the non-moving parties. See Thomson v. Salt Lake Cnty., 584 F.3d 1304, 1312 (10th Cir. 2009). On February 12, 2010, Brosh and Coon, both inmates confined at FCF, were working a 3 p.m. to 7 p.m. shift in the kitchen under the supervision of Sergeant Rhonda Wheeler. Part of those duties included returning leftover milk to and removing food items (e.g., milk, butter, fruit) from a large, industrial refrigerator known as Cooler 4. Cooler 4 measures twenty-five feet by sixteen feet, has a front exit door equipped with a window, and is lit inside. The temperature inside of Cooler 4 is monitored regularly and, as of 5:41 p.m. on February 12, 2010, was approximately thirty-nine degrees.

Near the end of their shift that day, Brosh and Coon were directed by Sergeant Wheeler to "stand by [C]ooler 4 and wait for [her] while [she] went and checked the production worksheet to see what [food items] needed to [be] pull[ed] out of [C]ooler 4." Aplt. App. at 373. Before Sergeant Wheeler returned, Brosh and Coon entered Cooler 4 in order to return cartons of leftover milk. Inside Cooler 4, Brosh and Coon encountered

defendant Duke and another inmate who was working under Duke's supervision. Shortly after Brosh and Coon entered Cooler 4, Duke left Cooler 4 with her inmate, padlocked the cooler door from the outside, and placed bread racks in front of the cooler door.

Brosh, after realizing what Duke had done, ran to the front of the cooler and began banging on and kicking the cooler door. Coon likewise began beating on the cooler door and screaming. Both Brosh and Coon tried unsuccessfully to open the cooler by "push[ing] on [a] large knob on the left-hand side of the door." Id. at 342, 361. Neither Brosh nor Coon reported observing the sticker on the inside of the cooler door that stated, "You are not locked in. Push handle to exit." Id. at 345. As a result, Brosh did not push on the small knob that was located directly to the left of, and that was referenced in, the sticker. Id. For his part, Coon reported pushing on both knobs, but was unaware that the cooler door could be opened from the inside. Id. at 363. It is undisputed that the emergency exit knob on the inside of the cooler door was designed to prevent anyone from being locked inside, even in the event that the exterior padlock was in place, as was the case here.

When Sergeant Wheeler returned to the front of Cooler 4, she "saw a face staring at [her] from within the cooler." Id. at 373. Sergeant Wheeler immediately opened the door to Cooler 4 and released Brosh and Coon. By Sergeant Wheeler's estimation, this occurred "approximately 10 to 12 minutes" after she had initially directed Brosh and Coon to stand outside of Cooler 4. Id. Brosh, who was not wearing a watch and did not have access to a clock, "guesstimate[d]" that he and Coon were inside of Cooler 4

-3-

"between 20 to 30 minutes." Id., Ex. 1 at 343. Coon, who likewise was not wearing a watch and did not have access to a clock, reported only that he was "told that it was over 20 minutes." Id. at 365. At the time of the incident, Brosh and Coon were wearing prison-issued "boots, socks, . . . pants, . . . t-shirt[s], underwear," and "kitchen smock[s]." Id. at 343, 363.

Following the incident, Sergeant Wheeler notified her shift commander. In Sergeant Wheeler's view, Duke acted out of spite towards Wheeler.[1] Ultimately, the associate warden at FCF concluded that Duke's "actions constitute[d] willful misconduct, and violat[ed] agency rules that affect[ed] [her ability to perform [her] job effectively and directly affect[ed] the safety and security of the facility." Id. at 397. As a result, Duke was disciplined by the associate warden.

Neither Brosh nor Coon filed a grievance regarding the incident. Both Brosh and Coon have since been released from custody.

---

[1] Plaintiffs contend that Duke disliked Wheeler and that, as a result of these feelings, acted maliciously and with the intent to injure the plaintiffs by locking them inside of Cooler 4. Duke, on the other hand, contends that her actions had a legitimate penological purpose. To begin with, Duke alleges (and Wheeler concurs) that shortly prior to this incident, a female staff member at FCF was assaulted by an inmate in the kitchen and, consequently, FCF staff members were on high alert. Duke further notes that the population at FCF is "80, 90 percent sex offenders." Aplt. App. at 258. According to Duke, she became concerned when she encountered plaintiffs inside of the refrigerator because they were unaccompanied by their supervisor. Duke contends that her actions in closing and locking the door to Cooler 4 were intended to "confront what she perceived to be wandering offenders," i.e., unsupervised inmates, "with unknown intentions during the harried and potentially volatile dinner hour." Id. at 253. Duke also alleges that she "locked [Cooler 4] with full intention of going right back." Id. at 259.

II

Plaintiffs, represented by counsel, filed this suit against Duke claiming that her actions violated their Eighth Amendment rights. More specifically, plaintiffs' complaint, in the single claim for relief asserted therein, alleged that

> Duke's intentional act of locking [them] in [the refrigerator] and failing to release [them] amount[ed] to deliberate indifference and willful and wanton disregard to the substantial risks of bodily injury and death to Plaintiffs, depriving Plaintiffs of life's necessities, and failing to provide Plaintiffs humane conditions of confinement in violation of Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment.

Id. at 15.

Duke moved to dismiss the complaint on a number of grounds, including for failure to state a claim upon which relief could be granted. The magistrate judge assigned to the case construed the plaintiffs' complaint only as alleging a claim of constitutionally inadequate conditions of confinement and in turn concluded that plaintiffs' allegations "that they were exposed to an above freezing temperature for approximately twenty minutes, while they were fully clothed," could not "plausibly constitute a substantial risk of serious harm." Id. at 59. Consequently, the magistrate judge concluded that "the conditions faced by plaintiffs simply d[id] not, as a matter of law, constitute cruel and unusual punishment under the Eighth Amendment," id., and thus recommended that Duke's motion to dismiss be granted, id. at 60.

Plaintiffs filed written objections to the magistrate judge's recommendation. Plaintiffs argued that their complaint "set forth, with specificity, an incident that occurred

on February 12, 2010, satisfying the objective and subjective components associated with an Eighth Amendment violation of constitutionally adequate conditions of confinement." Id. at 66.

The district court adopted in part and rejected in part the magistrate judge's recommendation. The district court began by stating that "[t]he difficulty in this case stem[med] from the fact that Plaintiffs did not specify what type of Eighth Amendment claim they intended to bring." Id. at 91. The district court in turn noted that plaintiffs, in their response to Duke's motion to dismiss, "contended that they had brought a conditions of confinement claim, but did not argue that they had pleaded any other type of Eighth Amendment claim." Id. The district court agreed with the magistrate judge that plaintiffs had failed to "plead[] a plausible conditions of confinement claim." Id. But the district court "f[ound] that the factual allegations in the Complaint [we]re sufficient to sustain an excessive force claim under the Eighth Amendment." Id. Consequently, the district court granted in part and denied in part Duke's motion to dismiss and allowed the case to proceed on the excessive force claim recognized by the district court.

Duke subsequently moved for summary judgment on that excessive force claim. The district court concluded that Duke was entitled to summary judgment with respect to the excessive force claim asserted against her by Brosh because Brosh failed to exhaust his available administrative remedies.[2] The district court in turn concluded that Duke was

_____

[2] Coon was not subject to the exhaustion requirement because he was paroled in October 2011 and the complaint was filed on February 9, 2012. See Norton v. City of Marietta, 432 F.3d 1145, 1150 (10th Cir. 2005) (per curiam)

entitled to qualified immunity from the excessive force claim asserted against her by Coon.

III

*A.  Exhaustion*

We first review de novo the district court's determination that Brosh's claim was barred for failure to exhaust his administrative remedies.  See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).  Under the Prison Litigation Reform Act (PLRA), prisoners are required to exhaust their administrative remedies before initiating an action to vindicate federally protected rights.  See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The exhaustion requirement applies to all claims, including those alleging excessive force.  Porter v. Nussle, 534 U.S. 516, 532 (2002).

Brosh contends he should be excused from the exhaustion requirement because his administrative remedies were unavailable.  See Tuckel v. Grover, 660 F.3d 1249, 1252 (10th Cir. 2011) (holding that exhaustion requirement may be excused and remedies deemed unavailable when "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of the administrative remedy" (brackets and internal quotation marks omitted)).  He says he was intimidated from filing a grievance, and if he had attempted to do so, he would have been denied entry into the mandatory counseling sessions that were

required as a condition of his release. These circumstances, he claims, rendered his remedies unavailable. We disagree.

To show that his remedies were indeed unavailable, Brosh was obligated to make two showings: "(1) that the threat or intimidation actually did deter [him] from lodging a grievance or pursuing a particular part of the prison administrative process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the prison administrative process that the inmate failed to exhaust." Id. at 1254. The first prong is subjective, while the second is objective. Id. "Only threats that are sufficiently serious or retaliatory acts that are severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes." Id.

Brosh satisfied the first subjective prong because there is no dispute that he did not file a grievance and he claims he was intimidated from doing so. Nevertheless, his showing under the second objective prong is deficient because an inmate of ordinary firmness and fortitude would not be deterred from filing a grievance under the circumstances presented here. Brosh said he was instructed not to discuss the incident, but he clearly spoke to other inmates about the episode. And the tone of voice used by the officers to convey their objections fails to persuade us that an inmate of ordinary firmness would be deterred from filing a grievance. Brosh's most persuasive argument is that he did not want to undermine his chances of getting into mandatory pre-release counseling by filing a grievance against Duke, but there is no evidence that any official

made such a threat. Rather, Brosh's case manager attempted to facilitate the grievance process by giving Brosh a blank grievance form. These circumstances did not render Brosh's administrative remedies unavailable, and the district court was therefore correct to grant summary judgment on Brosh's claim for failure to exhaust.

### B. Qualified Immunity

We next consider the district court's determination that Duke was entitled to qualified immunity on Coon's claim for excessive force. See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (explaining the two-pronged qualified-immunity analysis). We review the district court's ruling de novo, viewing the facts most favorably to Coon as the non-moving party. Thomson, 584 F.3d at 1311-12. "We may affirm on any basis supported by the record, even though not relied on by the district court." McCarty v. Gilchrist, 656 F.3d 1281, 1285 (10th Cir. 2011) (internal quotation marks and brackets omitted).

Where, as here, a government official moves for summary judgment on the basis of qualified immunity, we must employ "a two-step sequence for resolving" that claim. Pearson, 555 U.S. at 232. "First, [we] must decide whether the facts that [the] plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right." Id. "Second, if the plaintiff has satisfied this first step, [we] must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Id.

Turning to the first step of this analysis, the Eighth Amendment's prohibition against "cruel and unusual punishments" applies to the treatment of inmates by prison officials. See Whitley v. Albers, 475 U.S. 312, 319-21 (1986). In particular, prison officials violate inmates' rights under the Eighth Amendment when they subject them to the "unnecessary and wanton infliction of pain." Id. at 319. "[T]he core judicial inquiry" when a prison official is "accused of using excessive physical force in violation of the" Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7-8 (1992). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10.

It is this latter caveat that, in our view, is key in this case. Assuming, for purposes of argument, that Duke's action of locking the door to Cooler 4 while plaintiffs were inside can be considered a use of "force" within the meaning of the Eighth Amendment, we conclude that the evidence presented by Coon would not allow a jury to reasonably find that he experienced anything more than the minimum level of discomfort described in Hudson. In short, subjecting a typically-clothed inmate to a temperature of 39 degrees for approximately 20 minutes simply does not constitute the malicious and sadistic application of force. See Sow v. Fortville Police Dep't, 636 F.3d 293, 303 (7th Cir. 2011) (holding that police officer did not subject arrestee to excessive force by requiring him to

-10-

stay outside in cold temperatures during an investigation that lasted more than an hour);

Miller v. Sanilac Cnty., 606 F.3d 240, 251 (6th Cir. 2010) (holding that arrestee, who was

detained by a law enforcement officer for approximately 6 to 45 minutes outside in zero

degree weather with a significant wind-chill, was not subjected to excessive force).  As a

result, Coon cannot satisfy the first step of the qualified immunity analysis by alleging

facts that would establish a constitutional violation.

IV

The district court's grant of summary judgment in favor of defendant Duke is

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge

-11-