**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 25, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TYRONE HENRY McMILLER,

     Plaintiff - Appellant,

v.

CORRECTIONS CORPORATION OF
AMERICA; CHAD MILLER, Warden,
individually and in his official capacity;
FNU MIDDLETON, Assistant Warden,
individually and in his official capacity;
FNU HILLIGOSS, Unit Manager,
individually and in his official capacity;
FNU STEER, Chief, individually and in his
official capacity; FNU GRANTE, Captain,
individually and in his official capacity;
FNU STOKES, Sgt., individually and in
his official capacity; FNU PERRY, Sgt.,
individually and in his official capacity;
FNU OESTREICH, C/O, individually and
in his official capacity,

     Defendants - Appellees.

No. 16-6275
(D.C. No. 5:14-CV-00647-W)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BALDOCK**, and **BRISCOE**, Circuit Judges.
_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Tyrone Henry McMiller, a pro se Oklahoma inmate, appeals the district court's grant of summary judgment in favor of defendants on his 42 U.S.C. § 1983 action for failure to exhaust available administrative remedies.[1] He also appeals the dismissal of two individual defendants who he never served. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Mr. McMiller brought this suit to vindicate alleged violations of his state and federal constitutional rights. In particular, he alleged that on July 19, 2013, while incarcerated at the Cimarron Correctional Facility (CCF), a private prison operated by Corrections Corporation of America (CCA), correctional officer Oestreich placed him in administrative segregation in retaliation for accessing a legal-research computer and sending legal mail. He averred that he was left in segregation for three days, without clothing or bedding, in cold and unsanitary conditions. He named as defendants Oestreich, Sergeant Perry, CCA, and several other prison officials.

A magistrate judge directed the United States Marshals Service to serve defendants, but the contact information Mr. McMiller provided was insufficient to serve Oestreich, Perry, and several other defendants. Thus, at Mr. McMiller's urging, the magistrate judge ordered those defendants who had been served to file under seal any known contact information for Oestreich and Perry. The information they provided was inadequate to permit service, yet Mr. McMiller moved to have the

---

[1] Because Mr. McMiller is proceeding pro se, we afford his materials a solicitous construction. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

Marshals Service reattempt service on Oestreich and Perry. The magistrate judge denied the motion as moot because he had already so directed the Marshals Service. Moreover, although the service deadline had long since run, the magistrate judge granted Mr. McMiller an extension until August 7, 2015 to serve Oestreich and Perry, reminding him that it was his responsibility to perfect service. When that extension expired without Mr. McMiller presenting proof of service, the magistrate judge ordered him to show cause by January 14, 2016 why Oestreich and Perry should not be dismissed under Federal Rule of Civil Procedure 4(m) for failure to effect timely service. Mr. McMiller responded that the served defendants were helping Oestreich and Perry evade service by providing false contact information and by refusing to render "substantial assistance." R. at 249.

Meanwhile, those defendants who were served moved for summary judgment, claiming Mr. McMiller failed to exhaust his administrative remedies. The magistrate judge recommended that the motion be granted because Mr. McMiller could not show a material factual dispute that he properly exhausted his administrative remedies. Additionally, the magistrate judge recommended that Oestreich and Perry be dismissed without prejudice because Mr. McMiller did not show good cause for failing to serve them and there was no reason to grant another extension. Finally, the magistrate judge recommended that the court decline to exercise supplemental jurisdiction over the state-law claims absent a viable federal claim. The district court adopted these recommendations and entered judgment accordingly. Mr. McMiller appealed.

3

## II

"We review summary judgment decisions de novo, applying the same legal standard as the district court." *Tuckel v. Grover*, 660 F.3d 1249, 1251 (10th Cir. 2011) (internal quotation marks omitted). Under this standard, we "view evidence in the light most favorable to the non-moving party." *Id.* "Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

"To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (internal quotation marks omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Id.* (internal quotation marks omitted). "For dispositive issues on which [the non-moving party] will bear the burden of proof at trial, he must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case . . . ." *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (internal quotation marks omitted). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). However, under the most recent amendment to Rule 56(c)(4), "[a] formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn

declaration . . . subscribed in proper form as true under penalty of perjury to substitute for an affidavit." *Id.*, advisory committee's note to 2010 amendment.

A. Exhaustion

"There is no question that exhaustion is mandatory under the Prison[] Litigation Reform Act (PLRA) and that unexhausted claims cannot be brought in court." *Thomas v. Parker*, 609 F.3d 1114, 1117 (10th Cir. 2010) (brackets and internal quotation marks omitted); *see* 42 U.S.C. § 1997e(a). "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim. . . ." *Id.* (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

CCF employs the administrative grievance process used by the Oklahoma Department of Corrections (ODOC). This "process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority." *Thomas*, 609 F.3d at 1117. According to the ODOC grievance policy, when submitting a formal grievance, an inmate

> may obtain and complete the [formal grievance form] and submit the grievance form, along with the 'Request to Staff' form used in the informal resolution process with the response, to the reviewing authority. The 'Request to Staff' form may be a copy of the form. The

5

submitted documents may contain no alterations whatsoever. Altered documents will cause the grievance to be rejected as improperly filed.

R. at 123-24 (ODOC Offender Grievance Process OP-090124 § V.A).

The record shows Mr. McMiller failed to properly complete this process by attaching a copy of his Request to Staff to his grievance.[2] The parties do not dispute that he attempted informal resolution, and the record reflects that he submitted a written Request to Staff on July 22, 2013. The Request to Staff indicated that Oestreich, Perry, and others put him naked in a cold, unsanitary segregation cell because he complained about Oestreich. Mr. McMiller sought a conference with the warden, medical treatment, and $80,000. On August 8, his Request to Staff was returned with the following response: "I cannot approve the above requested actions. Contact medical for treatment on a sick call and the warden via RTS." R. at 218.

Dissatisfied with this response, Mr. McMiller submitted a formal grievance to the warden on August 12, 2013. He repeated his allegations, sought protection from Oestreich and Perry, and again requested $80,000. But he did not attach a copy of the Request to Staff form. Thus, on August 13, the grievance coordinator returned the grievance unanswered for three reasons:

1. "No informal action, 'Request to Staff' response";

2. "Out of time from date of incident—OP-090124 states that you must submit a completed grievance form within 15 calendar days of the incident or the

---

[2] Mr. McMiller lodged several administrative complaints, but his opening brief discusses only those relating to grievance number 13-153, which concerns his alleged placement in segregation. We confine our analysis accordingly. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue.").

6

receipt of the response to the Request to Staff whichever is later. You did not complete the process within the time frame."; and

3. "As this have [sic] been indicated in recent request to staff, this matter has been assigned for investigation." R. at 222.

At that point, rather than pursue the final step of the administrative process, Mr. McMiller submitted another Request to Staff on August 15, complaining that his grievance was improperly denied. He claimed that he did attach a copy of his initial Request to Staff to the grievance and that he timely submitted it. He also provided a copy of the initial Request to Staff form. On August 19, the grievance coordinator wrote in response: "I cannot do anything about this. You cannot file protection from staff. We cannot give you money." R. at 223.

Mr. McMiller then sent an appeal to the administrative review authority, insisting that he had attached the original Request to Staff to his grievance and that the Request to Staff was timely. The administrative review authority denied relief on three grounds:

1. "No informal action, 'Request to Staff' response";

2. "Out of time from date of incident"; and

3. "Not an issue grievable to Oklahoma Department of Corrections (Private prison property, misconduct (see OP-090124, Section II.B.1.), litigation pending, not within/under the authority/control of the Department of Corrections, no remedy allowed by the department, etc.) MONETARY COMPENSATION IS NOT AN ALLOWABLE REMEDY." R. at 227.

This chronology of Mr. McMiller's efforts to exhaust demonstrates he failed to properly complete the administrative grievance process. *See Little*, 607 F.3d at 1249 (explaining that proper exhaustion requires an inmate to follow the prison grievance

7

process). Indeed, his failure to attach his Request to Staff and response with the grievance perhaps explains why his grievance was denied in part as untimely: without a Request to Staff, prison officials saw only that he was filing a grievance on August 12 for alleged misconduct that occurred on July 19, which was beyond the fifteen days allowed by ODOC's grievance policy to file a grievance. *See* R. at 124 (ODOC Offender Grievance Process OP-090124 § V.A.1).

On appeal, Mr. McMiller insists he did, in fact, attach a copy of his Request to Staff to his grievance. But his unsubstantiated allegations fail to create a material factual dispute, and the record refutes his argument. Mr. McMiller filed with his summary judgment response his own unsworn declaration averring that he properly attached a copy of the Request to Staff to the grievance. He also filed with his summary judgment response a copy of the Request to Staff, along with a copy of the grievance and the envelope in which he sent the grievance to the reviewing authority. Both pages of the grievance were file-stamped "RECEIVED AUG 13 2013," as was the envelope, but the Request to Staff does not bear the same file-stamp. *See* R. at 219-21. The fact that the grievance and the envelope were file-stamped, but the Request to Staff was not, supports the conclusion that the Request to Staff was not attached to the grievance and in the same envelope when Mr. McMiller submitted the grievance to prison officials. This demonstrates he failed to properly comply with the prison's procedural grievance policy.

Mr. McMiller disputes this conclusion, citing his unsworn declaration, but his declaration bears only his printed name and it is not dated. *See* R. at 197. Perhaps

8

the printed name represents his signature, but without a date, the declaration does not satisfy 28 U.S.C. § 1746, which requires both a signature and date of execution for purposes of opposing summary judgment under Rule 56(c)(4). Mr. McMiller also claims, without support, that prison officials impeded his efforts to exhaust, but there is no evidence that prison officials rendered his remedies unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016) (holding that remedies are unavailable if prison officials are "unable or consistently unwilling to provide any relief," if "no ordinary prisoner can make sense of what [the grievance process] demands," or if "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").

B. Failure to Serve Oestreich and Perry

"We review the district court's dismissal for untimely service for an abuse of discretion." *Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir. 1995). At the time Mr. McMiller filed his complaint, Fed. R. Civ. P. 4(m) gave a plaintiff 120 days to serve a defendant.[3] Rule 4(m) states that if a defendant is not timely served, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

The district court did not abuse its discretion in dismissing Oestreich and Perry. Mr. McMiller failed to timely serve them, and thus the magistrate judge

---

[3] Rule 4(m) was amended effective December 1, 2015 to require service within 90 days of filing. Mr. McMiller filed his complaint on June 19, 2014, so the previous 120-day deadline applies.

9

extended the time for service until August 7, 2015. When that additional time expired, the magistrate judge ordered Mr. McMiller to show cause by January 14, 2016 why Oestreich and Perry should not be dismissed. Mr. McMiller responded by accusing the served defendants of helping to evade service for Oestreich and Perry. The magistrate judge correctly rejected that argument as failing to show good cause, noting that a plaintiff may show good cause if a defendant evades service, but there is no authority for extending that principle to a third party who is alleged to be helping another evade service. *See Cox v. Sandia Corp.*, 941 F.2d 1124, 1125 (10th Cir. 1991) (recognizing that good cause may be shown when a defendant evades service).

On appeal, Mr. McMiller contends he could not serve Oestreich and Perry because he was "denied [a] discover[y] right." Aplt. Br. at 4. This argument is meritless because the magistrate judge granted in part his "Motion for Extension of Time and Request [for] Disclosures and Discovery," Dist. Ct. Doc. 36, directing the served defendants to provide any additional contact information on Oestreich and Perry. Based on their sealed response, the magistrate judge ordered the Marshals Service to attempt service, but Oestreich could not be served with the updated contact information, and the only information regarding Perry indicated that an employee with that name left employment at CCF in 2003. This does not establish cause because for more than a year, Mr. McMiller was unable to effect service, despite the court's efforts to provide him with additional information. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000) (holding that plaintiff failed to establish cause where he had discovery for nearly a year). "It is the plaintiff's responsibility to

10

provide the United States Marshal with the address of the person to be served[.]"

*Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007).

Still, the magistrate judge considered whether a permissive extension of time was warranted by policy considerations or Mr. McMiller's pro se status. *See Espinoza*, 52 F.3d at 841-42 & n.8 (holding that even absent good cause, a court must consider whether policy considerations or a plaintiff's pro se status "might weigh in favor of granting a permissive extension of time" to effect service). The magistrate judge determined there was no justification for another extension, notwithstanding Mr. McMiller's pro se status, because Oestreich and Perry were entitled to summary judgment in any event on exhaustion grounds. Under these circumstances, the district court did not abuse its discretion in dismissing Oestreich and Perry for untimely service.

## III

The judgment of the district court is affirmed. Mr. McMiller's motion to proceed in forma pauperis is granted. The relevant statute, 28 U.S.C. § 1915(a)(1), does not permit litigants to avoid payment of filing and docketing fees, only *prepayment* of those fees. Thus, although we have disposed of this matter on the merits, Mr. McMiller remains obligated to pay all filing and docketing fees. He is directed to continue making partial payments until all fees have been paid in full.

Entered for the Court

Bobby R. Baldock
Circuit Judge

11