**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 2, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ARTHUR MOORE,

    Plaintiff - Appellant,

v.

SERGEANT TRESCH,

    Defendant - Appellee.

No. 20-1334
(D.C. No. 1:19-CV-02185-PAB-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.[**]
_____

On July 31, 2019, Arthur Moore, an inmate at the Sterling Correctional

Facility ("Sterling"), filed a pro se § 1983 complaint in the District of Colorado,

alleging First and Eighth Amendment violations. According to Moore, prison

officials at the Buena Vista Correctional Facility ("Buena Vista"), where he was

previously incarcerated, had failed to protect his personal safety by placing gang

members in his cell and retaliated against him for filing a prior civil complaint for the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

same claims.  Sergeant Tresch, a prison official at Buena Vista and the subject of Moore's allegations, filed a motion for summary judgment on February 4, 2020, arguing that Moore had failed to exhaust mandatory administrative remedies under the Prison Litigation Reform Act of 1995 (PLRA).

The magistrate judge recommended granting Tresch's motion for summary judgment for failure to exhaust administrative remedies on May 18, 2020.  The district court adopted the magistrate judge's recommendation, addressed Moore's timely objections to it, and granted Tresch's motion for summary judgment on August 13, 2020.  This appeal followed.  We affirm.

## I.

In 2008, while incarcerated at Sterling, Moore was charged with the attempted murder of a gang member.  Ten years later, on April 12, 2018, while Moore was detained at Buena Vista, a fight broke out between two gangs.  One of the gang members involved in the altercation was transferred to Moore's cell, and the gang members and Moore were placed on lockdown.

On May 2, 2018, Moore filed a Step 1 grievance asking why he was included in the lockdown.  His grievance was denied because, although he was not involved in the altercation, he was "documented as being associated with a disruptive group and therefore [was] placed on RFP status[1] pending an ongoing investigation into the

---

[1] Removal from Population ("RFP") is a "temporary status reserved for offenders who, for security/safety reasons, must be removed from general population."  R. at 236 n.3.

2

incident." R. at 236.  Moore then filed a Step 2 grievance on May 17, in which he requested to be transferred to a cell with a non-gang member as a cellmate and noted that his case file established that he was not to be celled with a gang member.  On June 18, Moore received a response, which stated that although he could not, per Colorado Department of Corrections (CDOC) administrative regulation 850-04, grieve his cell assignment, he was able to submit a move request in order to change cellmates.

The next day, Moore submitted a Step 3 grievance noting that because he was charged with the attempted murder of a gang member in 2008 at Sterling, his grievance request not to be celled with a gang member should override AR 850-04. On July 28, Moore received a response stating that because the grievance process was not a proper method for review of his RFP status, Moore had not exhausted his administrative remedies.  Nonetheless, the gang member was transferred to another cell after Buena Vista's response.

Moore had issues with cellmate placement again the following year. Allegedly, on June 10, 2019, Tresch told Moore that there was nothing stopping him from placing a gang member in Moore's cell.  Indeed, around that time, a gang member moved into the cell.  On June 11, Moore filed a Step 1 grievance addressing Tresch's statements and Moore's new cellmate.  Moore alleges that on June 30, Tresch threatened him for filing a complaint and grievances against him.  The grievance was denied on July 5, and Moore did not file a Step 2 or Step 3 grievance.

On July 31, 2019, Moore brought claims for "retaliation in violation of the First Amendment and failure to protect his safety in violation of the Eighth Amendment" in the District of Colorado. R. at 295. Tresch filed a motion for summary judgment on February 4, 2020, arguing that Moore hadn't exhausted his administrative remedies. The magistrate judge recommended granting the motion, and the district court granted it. This appeal followed.

## II.

This court reviews a district court's grant of summary judgment "de novo, using the same standards applied by the district court." *Roberts v. Barreras*, 484 F.3d 1236, 1239 (10th Cir. 2007). Summary judgment is warranted when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When a defendant moves for summary judgment on the basis of an affirmative defense—here, failure to exhaust—"[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011) (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)). Thus, the initial burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA "lies with the defendant." *Roberts*, 484 F.3d at 1241. If the defendant carries this burden, "the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Hutchinson*, 105 F.3d at 564. A plaintiff's failure to meet this burden results in the

affirmative defense barring his claim and entitles the defendant to summary judgment as a matter of law. *See id.*

Because Moore is a pro se litigant, we construe his pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nonetheless, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.

According to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 199e(a). The Supreme Court has held that the PLRA's exhaustion requirement is mandatory; an inmate may not bring any action "absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Furthermore, according to this court, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010).

The unavailability of administrative remedies is the single "textual exception to mandatory exhaustion" in the PLRA. *Ross*, 136 S. Ct. at 1858. Although a defendant carries the burden of showing that the plaintiff failed to exhaust his administrative remedies, "once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *May v. Segovia*,

929 F.3d 1223, 1234 (10th Cir. 2019) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).  The Supreme Court considers three types of administrative remedies to be unavailable, "although [they are] officially on the books": (1) a procedure hindered by officers' inability or unwillingness to provide relief, (2) an administrative scheme "so opaque that it becomes, practically speaking, incapable of use," and (3) a remedy thwarted by prison administrators' "machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60.

In support of his argument that Moore failed to exhaust his administrative remedies, Tresch offers testimony from Officer DeCesaro, a CDOC Step 3 Grievance Officer.  In an affidavit, DeCesaro states that an inmate must file a Step 1 grievance "no later than thirty (30) calendar days from the date the inmate knew, or should have known, of the facts giving rise to the grievance."  R. at 110.  According to DeCesaro, "[i]f the inmate is not satisfied with the result of the Step 1 grievance, he must file a Step 2 grievance form concerning the issue within 5 days of receipt of the written response to the Step 1 grievance."  *Id.*  If the inmate remains unsatisfied, he must "file a Step 3 grievance within 5 days of the written response to the Step 2 grievance."  *Id.*

DeCesaro found, upon review of CDOC's records about Moore's grievances, that Moore had filed a Step 1 grievance regarding CDOC's alleged failure to protect him from violence and, after it was denied, had not followed up with a Step 2 grievance.  Thus, DeCesaro concluded, Moore "did not exhaust administrative remedies as to that purported failure to protect."  *Id.* at 112.  Additionally, DeCesaro

6

found that "Moore did not file *any* grievance that he was retaliated against in violation of his First Amendment rights." *Id.*

Moore does not dispute that CDOC has a three-step grievance process or that that he failed to exhaust that process for his claims. To the contrary, Moore states that he "did not continue his step (2) and (3) [grievances]." *Id.* at 151 (parentheses omitted). Rather, Moore argues that the grievance procedure was unavailable to him because (1) it did not apply to his particular complaint (failure to protect due to sharing a cell with a gang member) and (2) Tresch deterred him from using the process by threatening him.

### A. Grievance Procedure Applicability

Moore argues that, because CDOC replied to his 2018 Step 2 and 3 grievances requesting not be celled with a gang member by saying that his complaint was not subject to the grievance process, the grievance process was thus unavailable for the type of claim he brought in 2019. The magistrate judge recommended finding that Moore had provided no evidence to support his argument that the administrative process was unavailable to grieve his 2019 failure to protect claim.

First, according to the recommendation, Moore's argument is "undermined by the fact that, even after receiving the CDOC's responses to the 2018 Grievances," Moore filed another Step 1 grievance in June 2019 regarding a housing issue. *Id.* at 246. That Moore filed another grievance on the same subject matter suggests that he did not actually believe his complaint was not subject to the formal three-step process set forth by CDOC.

7

The magistrate judge also found that CDOC's response, which indicated that his grievance was denied only after an investigation revealing that "staff [was] following policy" and expressly notified Moore that he "ha[d] not exhausted [his] means of addressing this matter" and could "obtain further review by submitting the next step," in no way suggested that Moore's complaint wasn't subject to the grievance procedure. *Id.* at 72.

In the district court, Moore objected to the magistrate judge's conclusion that there was no evidence that the administrative process was unavailable to grieve Moore's complaint on two grounds. First, Moore argued that filing a Step 1 grievance knowing it was unavailable does not mean the grievance process was actually available and, second, that, as a result of his agreement with CDOC preventing him from sharing a cell with a gang member, proving that a gang member was placed in his cell suffices to show an Eighth Amendment violation.

The district court agreed with Moore insofar as "[i]f there are truly no available administrative remedies for plaintiff to exhaust, then his decision to attempt to utilize a futile procedure would not somehow" subject him to the PLRA's exhaustion requirement. *Id.* at 299. However, the district court found, "that is not what the evidence demonstrates." *Id.* at 300.

A review of the record reveals a set of undisputed facts that indicate Moore has failed to satisfy his burden. Based on the undisputed evidence, there is no question that administrative remedies were available to Moore for his failure to protect claim. First, DeCesaro states—and Moore does not dispute—that, after

8

Moore's Step 1 grievance regarding his Eighth Amendment claim was denied, he

"did not continue his grievance process." *Id.* at 151. Next, AR 850-04 states that the

grievance process "*may not* be used to seek review of . . . [f]acility placement, unit,

cell[,] and bunk assignment," including bunk assignments due to "protective

custody[,] as those decisions are guided by AR 650-02." *Id.* at 117. Additionally,

CDOC denied Moore's Step 1 grievance because "it appears that staff are following

policy" and stated that he "ha[s] not exhausted [his] means of addressing this matter."

*Id.* at 72. Finally, the grievance process is available to address "a broad range of

complaints," including failure to protect from violence. *Id.* at 117.

We agree with the district court that the "only evidence that could be

interpreted as making the grievance process unavailable to [Moore] is AR 850-04,"

which bars inmates from grieving bunk assignments. *Id.* at 301. But Moore's claim

regards failure to protect from violence—and AR 850-04 is silent on the applicability

of the grievance process to such a complaint. Furthermore, the response to Moore's

Step 1 grievance informed him that he had "not exhausted [his] means" of addressing

the matter of his First and Eighth Amendment claims. *Id.* at 72.

Moore argues that he was led to believe the grievance process was unavailable

for his failure to protect claim because, when CDOC denied his Step 2 and 3

grievances requesting not to be celled with a gang member in 2018, it replied that his

complaint was not subject to the grievance process. *Id.* at 152. But Moore's initial

grievance contained just one request: "I want to know why I am on RFP." *Id.* at 214

(parentheses omitted). Although Moore's Step 2 grievance shifts its focus to his

desire not to live with a gang member, CDOC's response centers on his complaint about RFP classification because a "substantive issue or remedy may not be added at a later step if it has not been contained in each previous step of that particular grievance." *Id.* at 117. CDOC's response to Moore's 2018 grievance is irrelevant to its 2019 merits-based denial (which included a statement that further steps would be necessary in order to exhaust the grievance process) of Moore's failure to protect grievance. CDOC's response to Moore in 2018—that RFP "placement is a classification issue and is not a grievable matter"—does not prove that a failure to protect claim cannot be exhausted by the grievance process. *Id.* at 217.

Furthermore, we agree with the district court that Moore's second objection— that because he has an agreement with CDOC ensuring him a non-gang member cellmate, he can establish an Eighth Amendment violation by proving that a gang member was placed in his cell—is unpersuasive. The record is bereft of any evidence of such an agreement. Additionally, even if Moore could prove the existence and enforceability of such an agreement, he would need to first take the issue up with CDOC by way of its administrative processes. The PLRA establishes a "mandatory exhaustion regime[], foreclosing judicial discretion." *Ross*, 136 S. Ct. at 1857. Therefore, Moore would need to first exhaust his administrative remedies before we could weigh in on the merits of his alleged agreement with CDOC.

## B.  Threats and Intimidation

Moore also argues that he "did not continue his grievance process . . . [because of] 'prior threats' from . . . Tresch." R. at 151. This court has held that because an

10

administrative remedy cannot be considered meaningfully available "if its use will result in serious retaliation[,] . . . when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available.'" *Tuckel*, 660 F.3d at 1252–53.

To determine whether an inmate has adequately shown that threats or intimidation have rendered a remedy unavailable, we apply the *Turner* test, originally developed by the Eleventh Circuit. *See id.* at 1254 (adopting *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008)). To prevail on his claim, Moore must make two showings: "(1) that the threat or intimidation actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the prison administrative process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the prison administrative process that the inmate failed to exhaust." *Id.* at 1254. We agree with the district court that Moore satisfied neither the subjective showing—that he was "actually deterred"—nor the "objective one, requiring the district court to consider the context of the alleged threat or intimidation." *Id.*

Moore argues that Tresch's statement on June 10, 2019, that "'[t]here is no law that can stop him from putting a gangmember [sic] in [Moore's] cell' can clearly be inferred as a threat" and that this threat "did stop [him] from continuing to file his step 2 and 3 grievances." R. at 152 (emphasis and parentheses omitted). But Moore filed a grievance dealing with this very statement on the day after he alleged it was spoken. The statement about which Moore complains in his Step 1 grievance—that

11

"Sgt. Tresch told [him] . . . that there is (no) law that can stop him from putting a (gang member) in the cell with" him—is nearly identical to the statement Moore says frightened him out of filing a grievance. *Id.* at 72. Moore's claim thus fails on the subjective prong because Tresch's alleged statement did not "actually . . . deter [him] from lodging a grievance." *May*, 929 F.3d at 1235 (internal quotations omitted). Moore didn't follow up with Step 2 and 3 grievances, but he provides no explanation for why Tresch's alleged threat would deter him from completing the grievance procedure but not filing an initial grievance.

Moore alleges that on or about June 30, 2019, Tresch entered his cell and made "'threats' for filing [a] civil complaint and filing grievances on him." R. at 69. But, although we construe the facts in Moore's favor, he is required to "produce specific facts that show . . . the threat . . . or intimidation actually did deter [him] from lodging a grievance." *May*, 929 F.3d at 1235 (internal quotations omitted). Moore has not provided details about the contents of the alleged threats beyond a broad reference to their existence, nor has he explained why the alleged threats deterred him from filing a grievance. Therefore, Moore has failed to satisfy his burden to produce evidence showing that specific threats deterred him from filing a grievance.

Moore has also failed to show that Tresch's alleged threats were "sufficiently serious . . . to deter a reasonable inmate" from filing a grievance. *Tuckel*, 660 F.3d at 1254. As we found above, Moore has not identified the specific nature or contents of Tresch's alleged threats. He has also failed to offer evidence that other inmates have been—or reasonably would be—deterred by such threats. Therefore, Moore has

12

provided no evidence to support a favorable finding on the *Turner* test's objective prong.

## IV.

For the foregoing reasons, we AFFIRM the district court's ruling and DISMISS Moore's motions for speedy disposition and to extend time to resubmit filing fees as moot.

Entered for the Court

Allison H. Eid
Circuit Judge