**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1080
_____

MICHAEL RINALDI,
                                        Appellant

v.

UNITED STATES OF AMERICA; HARRELL WATTS,
Central Office; J.L. Norwood, Reginal Director, B.A.
BLEDSOE, Warden, J. E. THOMAS, Warden; J.
GRONDOLSKY, Acting Warden; MR. YOUNG, Associate
Warden; MRS. REAR, Associate Warden; JOHN DOE,
Captain;  MR. TAGGART; DR. MINK, Psychology; MR.
KISSELL, Case Manager; D. BAYSORE, Counselor; GEE,
Officer;  MR. BINGAMAN, Officer; MR. PACKARD,
Officer; MRS. SHIVERY, Officer; B. TAUNER, Officer
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Civil Action No. 1:13-cv-00450)
Honorable Sylvia H. Rambo, U.S. District Judge
_____

Argued: January 25, 2018

Before: KRAUSE, SCIRICA, and FUENTES, *Circuit Judges*

(Opinion Filed: September 12, 2018)

Tarah E. Ackerman, Esq.    [Argued]
Allegheny Technologies, Inc.
1000 Six PPG Place
Pittsburgh, PA 15222

Matthew R. Divelbiss, Esq.
Jones Day
500 Grant Street
Suite 4500
Pittsburgh, PA 15219

*Attorney for Plaintiff-Appellant Michael Rinaldi*

Timothy S. Judge, Esq.     [Argued]
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

*Attorney for Defendants-Appellees*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

Appellant Michael Rinaldi, who at all relevant times was an inmate in custody at United States Penitentiary, Lewisburg ("Lewisburg" or the "Institution"), appeals the District Court's dismissal of his complaint[1] alleging that the

_____

[1] The District Court considered the Government's "Motion to Dismiss or, in the alternative, Motion for Summary Judgment," JA 68, as one "for dismissal primarily under Rule 12(b)(6)," *Rinaldi v. United States*, 2015 WL 2131208, at *1 n.1 (M.D. Pa. May 7, 2015), and accepted as true the factual allegations in Rinaldi's complaint. In dismissing Rinaldi's claims and entering judgment in the Government's favor based on an affirmative defense, the District Court relied in part on prison records and an affidavit and to that extent construed the Government's motion as one for summary judgment. *Id.* at *7-8, *19. As we have observed in past cases, where a defendant moves to dismiss based on a failure-to-exhaust defense and "the exhaustion issue turns on [] indisputably authentic documents related to [the inmate's] grievances," we may consider those documents "without converting [a motion to dismiss] to a motion for summary judgment," *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004), although different treatment may be warranted where the court considers other types of evidence, *see Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018) (affirming order on defendant's motion for summary judgment for failure-to-exhaust based on prison records and an

3

conduct of various personnel violated his constitutional and statutory rights. His appeal requires us to resolve three matters of first impression for our Court: (1) what showing an inmate must make to establish that administrative remedies were not "available" within the meaning of the Prison Litigation Reform Act ("PLRA"); (2) whether the PLRA's exhaustion requirement is satisfied where a prison administrator elects to resolve a procedurally improper administrative request on the merits; and (3) whether a prison's housing and cellmate assignments meet the discretionary function exception to the Federal Tort Claims Act's limited waiver of sovereign immunity. For the reasons that follow, we will affirm the District Court's dismissal of Rinaldi's complaint in part and will vacate and remand in part.

## I. Factual Background

Between November 2011 and 2012, while housed at Lewisburg, Rinaldi filed a number of administrative requests, including one related to an alleged assault and one related to alleged retaliation. He initiated his assault claim with an "informal resolution,"[2] dated January 29, 2012, alleging that

affidavit without discussing when such a motion may be construed as a motion to dismiss). In any event, we likewise will accept Rinaldi's factual allegations as true for purposes of this appeal. *See Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 642 n.1 (2008).

[2] As explained in greater detail below, an "informal resolution" is the first step that must be taken by an inmate in the Bureau of Prisons ("BOP") as part of its 4-step grievance process. The subsequent steps are the filing of a formal

he had been assaulted by a previous cellmate (Cellmate #1), and "requesting the institution discontinue its practice of forcing inmates to cell together [] regardless of their compatibility." JA 160. On February 1, after that informal request was denied, Rinaldi filed a formal request (the "Assault Request"), which the Institution eventually denied on the ground that there was "no basis for [Rinaldi's] accusations." JA 165.

The following day, February 2, Rinaldi was transferred to another unit. According to Rinaldi's complaint, Appellee Counselor Baysore had previously warned Rinaldi that unless he stopped filing requests, "she would have him moved to a different unit and placed in a cell with an inmate who was known for assaulting his cellmates," and Appellee Officer Gee, who conducted the transfer, told Rinaldi that the reason he was being moved was because he "didn't listen" to those warnings. JA 61. Despite his protests, Rinaldi was transferred and placed in a cell with a new cellmate (Cellmate #2), who, Rinaldi alleges, threatened him by informing Lewisburg personnel, including Officer Gee and Counselor Baysore, "that if Rinaldi were placed in the cell he would kill [him]." JA 61. Over the course of the next three weeks, Rinaldi asserts he "suffered cuts and bruises and emotional distress" from several physical altercations with Cellmate #2. JA 61.

Rinaldi sought administrative relief for the alleged retaliatory transfer on February 2, but because he allegedly was

"request" at the institution, an appeal to the BOP Regional Director, and a final appeal to the General Counsel of the BOP. *See* 28 C.F.R. §§ 542.13-.18.

5

concerned about the risk of further retaliation, he opted not to file an informal resolution or initial retaliatory transfer request directly with the Institution. Instead, he followed the procedure for "Sensitive" requests, filing this claim (the "Retaliation Request") directly with the Regional Director. According to BOP records, the Retaliation Request was rejected as procedurally improper with directions to first file it at the Institution, which Rinaldi declined to do.[3]

Separately, Rinaldi also sought to obtain administrative relief for the assault by Cellmate #2. Although Rinaldi was required to file an informal resolution and formal request with the Institution,[4] he did not do so. Rather, as he was then poised to appeal the denial of his original Assault Request (concerning Cellmate #1) to the Regional Director, he simply incorporated allegations as to both Cellmate #1 and Cellmate #2 into his appeal. As a result, the Regional Director could have rejected that appeal, at least as to Cellmate #2, on procedural grounds

---

[3] There is some ambiguity in the record as to whether Rinaldi took a further appeal of the rejection by the Regional Director to the General Counsel. However, the Government does not raise and thus has waived this issue as a basis for Rinaldi's failure to exhaust, instead resting its argument exclusively on Rinaldi's failure to refile the "Sensitive" request with the Institution. *See United States v. Albertson*, 645 F.3d 191, 195 (3d Cir. 2011).

[4] The assault by Cellmate #2 was "unrelated" to the assault by Cellmate #1 and thus was required to be filed as a separate grievance. 28 C.F.R. § 542.14(c)(2); *see id.* § 542.15(b)(2).

6

for failure to exhaust because his claim as to Cellmate #2 was never presented to the Institution in the first instance. Instead, however, he issued a decision that acknowledged that the appeal raised claims concerning the assaults by Cellmates #1 and #2 and rejected *both* claims on the merits. As the Regional Director put it:

> You appeal the response from the Warden at USP Lewisburg and claim you were forced into a cell with another inmate who you allege threatened to kill you prior to being placed in the same cell. You also state you were once assaulted by a previous cellmate and received injuries. . . [T]here is no record of you being assaulted by your previous or current cellmate. . . . Accordingly, your appeal is denied.

JA 168.[5]

## II.    Procedural History

Unable to obtain redress through the BOP grievance process, Rinaldi, initially proceeding *pro se*, filed a complaint in the Middle District of Pennsylvania raising three claims relevant to this appeal: (1) a First Amendment claim based on the retaliatory conduct alleged in the Retaliation Request; (2) an Eighth Amendment claim based on the cell placement and

---

[5] It appears that Rinaldi's further appeal to the General Counsel, though summarily denied, was also denied on the merits because the BOP database entry indicated a status code "DNY," meaning a "request or appeal denied substantially in full." JA 170, 179.

resulting attack by Cellmate #2 alleged in his appeal of the Assault Request; and (3) a claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, against the United States for negligently placing Rinaldi with a cellmate that prison personnel knew or should have known would assault him.[6]

---

[6] Rinaldi also raised a claim pursuant to the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*, based on his inability to attend congregational prayer while housed in the Special Management Unit at Lewisburg, as well as a claim construed as a *Bivens* claim based on a violation of the Free Exercise Clause of the United States Constitution. *See Bivens v. Six Unknown Names Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Rinaldi*, 2015 WL 2131208, at *10, 16-17. The District Court dismissed Rinaldi's RFRA claim with leave to amend, explaining to Rinaldi that he was required to allege the personal involvement of each defendant, but Rinaldi declined to file an amended complaint and did not appeal the denial of his RFRA claim. Between the District Court's order and the filing of this appeal, we held in *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016), that *Bivens* did not extend to Free Exercise claims and Rinaldi concedes in his Reply brief in this appeal that *Mack* forecloses his *Bivens* claim. Rinaldi also requests for the first time in his Reply that, in view of *Mack*, we remand to give him the opportunity to amend his RFRA claim—the very opportunity he passed up when offered by the District Court. We will deny that request because "the courts of appeals will not consider arguments raised on appeal for the first time in a reply brief." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 204-5 n. 29 (3d Cir. 1990) (citation omitted).

The District Court granted the Government's "Motion to Dismiss or, in the alternative, Motion for Summary Judgment," concluding (1) the First Amendment claim was barred by the PLRA, 42 U.S.C. § 1997e(a), because Rinaldi had declined to file his Retaliation Request with the Institution and thus had not exhausted the Retaliation Request; (2) the Eighth Amendment claim covering the assault by Cellmate #2 was likewise unexhausted because Rinaldi failed to file an initial request and raised it only in the appeal of his Assault Request; and (3) the Court did not have jurisdiction over the FTCA claim because cellmate assignments fall within the discretionary function exception to the FTCA's waiver of sovereign immunity.[7] *Rinaldi v. United States*, No. 13-cv-450, 2015 WL 2131208, at *5-8 (M.D. Pa. May 7, 2015); 28 U.S.C. § 2680(a).

After appointing *pro bono* counsel on appeal, we directed the parties to address, among other things, whether Rinaldi failed to exhaust his administrative remedies regarding his First and Eighth Amendment claims and the applicability

---

[7] While the District Court concluded, based on the discretionary function exception, that it "lack[ed] jurisdiction over Plaintiff's claims against the United States and all other Defendants in their official capacity," *Rinaldi*, 2015 WL 2131208, at *6, it properly concluded that it had jurisdiction over Rinaldi's claims against the defendants in their individual capacities. *See Jaffee v. United States,* 592 F.2d 712, 717 (3d Cir. 1979); *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States,* 482 F.3d 1157, 1173 (9th Cir. 2007) (noting that a *Bivens* action can be maintained against a defendant in his or her individual capacity only).

of the discretionary function exception to Rinaldi's FTCA claim.

## III.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over both the exhaustion determination, *Spruill v. Gillis*, 372 F.3d 218, 226 (3d Cir. 2004), and the applicability of the discretionary function exception to the wavier of sovereign immunity, *Mitchell v. United States*, 225 F.3d 361, 362 (3d Cir. 2000).

## IV.    Discussion

Below we consider whether Rinaldi exhausted his First Amendment and Eighth Amendment claims before turning to Rinaldi's FTCA claim.

### A.    Exhaustion under the PLRA

Congress enacted the PLRA to reduce the "disruptive tide of frivolous prisoner litigation." *Woodford v. Ngo*, 548 U.S. 81, 97 (2006). In contrast to its precursor, the Civil Rights of Institutionalized Persons Act, § 7, 94 Stat. 352 (1980), which had a "weak exhaustion provision," the PLRA "invigorated" the administrative remedy of exhaustion, *Woodford*, 548 U.S. at 84, by providing:

> [n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail . . . *until such administrative remedies as are available* are exhausted.

10

42 U.S.C. § 1997e(a) (emphasis added). Exhaustion is thus a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, as we held in *Small v. Camden County*, it constitutes a "'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" 728 F.3d 265, 270 (3d Cir. 2013) (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)). We make that determination by "evaluating compliance with the prison's specific grievance procedures," *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010), and analyzing whether the procedures were "available" to the inmate. *Small*, 728 F.3d at 269, 271; 42 U.S.C. § 1997e(a).

While *Small* made clear that factual disputes relevant to exhaustion may be resolved by a district judge without the participation of a jury, *id.* at 271, we recently clarified that, before engaging in such fact-finding, the judge must provide the parties with "some form of notice . . . and an opportunity to respond," although we left the exact form of this notice to "the discretion of the district court [] on a case-by-case basis." *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018). At a minimum, however, the court must "notify the parties that it will consider exhaustion in its role as a fact finder under *Small*," and, although live testimony is not necessarily required, it also "must at least provide the parties with an opportunity to submit materials relevant to exhaustion that are not already before it." *Id; see Small*, 728 F.3d at 269.

11

### 1. *Rinaldi's First Amendment Retaliation Claim*

Rinaldi argues that his First Amendment claim should not have been dismissed on exhaustion grounds because the safety risks of filing directly with the Institution rendered that administrative remedy unavailable. Because we must measure whether Rinaldi exhausted his administrative remedies against the yardstick of the grievance procedures set forth in the relevant BOP regulations, *see* 28 C.F.R. §§ 542.13-.18; *Drippe*, 604 F.3d at 781, we will first summarize (a) the relevant administrative remedies under BOP regulations and (b) the case law relevant to the availability of those remedies under the PLRA before addressing (c) the showing an inmate must make to prove unavailability, and (d) whether remand is necessary to determine if Rinaldi can make that showing here.

#### (a) Exhaustion of BOP Administrative Remedies

As a general matter, inmates must (1) attempt an informal resolution with staff at the institution, *id*. § 542.13(a); (2) file a formal complaint with the institution, *id.* § 542.14(c); (3) file an appeal to the appropriate Regional Director if the inmate is not satisfied with the institution's response to the formal complaint, *id.* § 542.15(a); and (4) file another appeal to the General Counsel if the inmate is not satisfied with the Regional Director's response to the appeal, *id.* However, where an inmate "reasonably believes the issue [that is the subject of his grievance] is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution," the inmate may proceed directly to Step (3) by "submit[ing] the Request directly to the appropriate

12

Regional Director." *Id.* § 542.14(d). The inmate must "clearly mark 'Sensitive' upon the Request and explain, in writing, the reason for not submitting the Request at the institution." *Id.* If the appropriate reviewer does not agree that the request is "Sensitive," the regulations provide that "the inmate shall be advised in writing" that the "Request will not be accepted," and the inmate then "may pursue the matter by submitting a [] . . . Request locally" with the institution. *Id.*

Here, Rinaldi considered his Retaliation Request a "Sensitive" request and therefore filed it with the Regional Director in the first instance. As discussed above, however, the Regional Director rejected it on the procedural ground that Rinaldi should have filed first with Lewisburg.[8] That tees up

---

[8] It appears that there are two potentially applicable regulations—and, by extension, two applicable procedures—when a "Sensitive" request is rejected. *See* 28 C.F.R. § 542.14(d) (governing "Sensitive" requests); *id.* § 542.17(c) (governing all rejections including "a rejection on the basis of [the] exception [for 'Sensitive' issues]"). We will assume for purposes of this appeal that those regulations required Rinaldi to refile at the Institution upon receipt of the rejection because Rinaldi himself adopts that position and raises no arguments to the contrary. We note, however, that § 542.17(c) is not a model of clarity, particularly when viewed together with § 542.14(d)(1). While § 542.14(d)(1) directs what inmates "shall" do after a "Sensitive" request is rejected, it also states that inmates "*may* pursue the matter by submitting an Administrative Remedy Request locally to the Warden," suggesting that refiling at the institution is a permissible alternative to direct appeal pursuant to § 542.17(c). *Id.* § 542.14(d)(1) (emphasis added). Similarly, § 542.17(c)

13

the first exhaustion issue we confront today: whether Rinaldi was required to submit his Retaliation Request to the Institution to satisfy the PLRA's exhaustion requirement before filing his First Amendment claim in federal court or whether he was relieved of that requirement because the opportunity to file with the Institution was not "available." 42 U.S.C. § 1997e(a).

(b)     Unavailability of Administrative Remedies

The PLRA requires only "proper exhaustion," meaning exhaustion of those administrative remedies that are "available." *Woodford*, 548 U.S. at 93. In its recent decision in *Ross v. Blake*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not

provides that an "inmate may appeal [a] rejection," and specifically provides that the regulation covers rejections of "Sensitive" requests. As for § 542.17(c), the only qualifier to permission to appeal directly is that "the inmate is not given an opportunity to correct the defect and resubmit." *Id.* § 542.17(c). But it is not apparent what "defect" can be "correct[ed]" when an inmate in good faith believes that the request is indeed "Sensitive" and therefore warrants a direct appeal. Because, "under § 1997e(a), the warden is responsible for the grievance system . . . he or she may alter the grievance system to require more (or less) of inmates by way of exhaustion," *Spruill*, 372 F.3d at 235, and in view of the ambiguity in § 542.17(c), wardens and the BOP itself may wish to provide guidance.

14

capable of use to obtain relief": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  136 S. Ct. 1850, 1859-60 (2016).

We too have encountered circumstances in which a grievance process, though "officially on the books," *Ross*, 136 S. Ct. at 1859, is in reality incapable of use such that the PLRA's exhaustion requirement must be deemed satisfied.  In *Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002), for example, we rejected the prison's affirmative defense of failure to exhaust where the plaintiff alleged he was given misleading filing instructions, resulting in a procedural default, and argued "essentially that officials in the security department of the prison thwarted his efforts to exhaust his administrative remedies."  *Id*. at 113.  And more recently, in *Robinson v. Superintendent Rockview SCI*, we held that the prison "rendered its administrative remedies unavailable to [the plaintiff] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim."  831 F.3d 148, 154 (3d Cir. 2016).  In such circumstances, "filing suit [was the plaintiff's] only method to advance his claim."  *Id.*

Rinaldi now asks us to recognize another circumstance in which the grievance process is unavailable, *i.e.*, where an inmate is deterred from pursuing an administrative grievance by a prison official's serious threats of substantial retaliation—

15

a circumstance that Rinaldi contends falls squarely within *Ross*'s third category because a prisoner's ability to take advantage of the grievance process has then been "thwarted" by prison administrators "through . . . intimidation." *Ross*, 136 S. Ct. at 1860.

We agree that serious threats of substantial retaliation can trigger this third category of unavailability, and thus join our Sister Circuits who have held, even before *Ross*, that administrative remedies are not "available" under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm.[9] *See McBride v. Lopez*, 807 F.3d 982, 986-87 (9th Cir. 2015); *Tuckel v. Grover*, 660 F.3d 1249, 1252-53 (10th Cir. 2011); *Turner v. Burnside*, 541 F.3d 1077, 1084-86 (11th Cir. 2008); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *Hemphill v. New York*, 380 F.3d 680, 686-87 (2d Cir. 2006), *abrogated on other grounds as recognized in Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).

As the Tenth Circuit eloquently explained in *Tuckel v. Grover*, it is "difficult to accept the proposition that an administrative remedy is available in any meaningful sense if its use will result in serious retaliation and bodily harm." 660

---

[9] Given our conclusion that this circumstance falls within the third category described in *Ross*, we do not have occasion to address, as have some of our Sister Circuits, whether *Ross*'s three categories are exhaustive or merely illustrative. *See, e.g.*, *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (describing the three categories as "non-exhaustive"); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016) (same).

F.3d at 1252. To the contrary, threats made by prison officials that inhibit an inmate from utilizing an administrative process "disrupt the operation and frustrate the purposes of the administrative remedies process enough that the PLRA's exhaustion requirement does not allow them" and thus lift the exhaustion requirement as to that part of the process. *Id.* at 1253 (quoting *Turner v. Burnside*, 541 F.3d at 1085). This approach not only is consistent with the plain language of the PLRA, which requires only exhaustion of administrative remedies "as are available," 42 U.S.C. § 1997e(a), but also is "faithful to the underlying purposes of the PLRA," *id.* at 1253, as it "reduces any incentive that prison officials otherwise might have to use threats to prevent inmates from exhausting their administrative remedies" and "thereby safeguards the benefits of the administrative review process for everyone," *Turner*, 541 F.3d at 1085.

With *Ross*, the Supreme Court too has recognized that "intimidation" by prison officials can "thwart inmates from taking advantage of a grievance process" and thus render that process "unavailable." 136 S. Ct. at 1860. But the question remains what showing an inmate must make to establish such "intimidation" and defeat a failure-to-exhaust defense: Must he show (1) that, objectively, an inmate of reasonable fortitude would be deterred from filing a grievance; (2) that, subjectively, he himself was deterred from filing a grievance; or (3) that both an objective and subjective test have been satisfied? To that question we now turn.

(c) The Showing Required to Prove
Unavailability

The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him. *Tuckel*, 660 F.3d at 1253-54.

To determine what showing is required to establish unavailability based on "intimidation," we find helpful guidance in the reasoning of other Courts of Appeals. In *Turner v. Burnside*, the Eleventh Circuit held that an inmate must show both that "the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process"; and that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." 541 F.3d at 1085. The Tenth Circuit has also embraced the "two-prong analysis in *Turner* . . . as the best model" for the "showing necessary to defeat a failure-to-exhaust defense," *Tuckel*, 660 F.3d at 1253-54, explaining that the subjective element ensures that the grievance process was perceived as unavailable by this plaintiff, *i.e.*, "that he was actually deterred," while the objective element "ensures that inmates cannot easily circumvent the exhaustion requirement" and thus "only threats that are sufficiently serious and retaliatory acts that are severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes," *id.* at 1254. The Ninth Circuit, too, has embraced

18

*Turner* as "straightforward and conceptually simple to apply." *See McBride*, 807 F.3d at 987-88.

We also find the *Turner* test a sensible one.[10] The objective component is of chief importance because it maintains the exhaustion requirement for the vast majority of claims and allows otherwise unexhausted claims to proceed only in the exceptional circumstance where the facts alleged would reasonably give rise to a substantial fear of serious harm. As the *Tuckel* Court explained, the objective requirement allows courts to easily weed out suits that attempt to circumvent the PLRA, such as where "a threat . . . was allegedly made years prior to the inmate's suit" or "an inmate is no longer held in the prison in which he experienced retaliatory violence." 660 F.3d at 1254. Because "demonstrating that an official objectively chilled an inmate from relying on administrative remedies presents a significant challenge in any context," the objective prong leaves "little incentive for an inmate to assert baseless retaliation claims rather than simply utilizing a grievance procedure," *id*., and it instead filters for those threats so serious as to lead a rational inmate to forego the benefits of administrative review, *see, e.g.*, *McBride*, 807 F.3d at 988 (concluding that the inmate failed to satisfy *Turner*'s objective prong where there was no "basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten

---

[10] Indeed, federal courts are well accustomed to applying tests involving both an objective and subjective component in the prisoner litigation context. *See, e.g.*, *Hudson v. McMilian*, 503 U.S. 1, 8 (1992); *Ricks v. Shover*, 981 F.2d 468, 473-74 (3d Cir. 2018).

retaliation if the prisoner chose to utilize the prison's grievance system").

But the subjective component also has a role to play. For even though a showing that an inmate of reasonable fortitude would be deterred offers relevant circumstantial evidence of subjective deterrence, *see Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *Kedra v. Schroeter*, 876 F.3d 424, 441 (3d Cir. 2017), a district court may conclude—based on documents, affidavits, or live testimony if deemed warranted, *see Paladino*, 885 F.3d at 211—that the subjective showing has not been satisfied. Evidence that an inmate continued to file substantially similar claims through the same grievance process, for example, may be sufficiently compelling to defeat an inmate's assertion of subjective deterrence.

In sum, we perceive a valuable role for both the objective and subjective components of the *Turner* test and today adopt it as our own. To defeat a failure-to-exhaust defense, an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate.

(d)     Application to Rinaldi

As applied here, Rinaldi's Retaliation Request unquestionably satisfies the objective test for unavailability. Accepting the allegation that Rinaldi's continued resistance to the grievance process is what led prison authorities to house him with a cellmate they knew threatened to kill him, we have little trouble concluding that "a reasonable inmate of ordinary firmness and fortitude" would be "deter[red] . . . from lodging

20

a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Turner*, 541 F.3d at 1084-85. And the Government conceded as much at oral argument. The Government disputes, however, whether Rinaldi was subjectively deterred.

Because the District Court did not have the benefit of the test we announce today and because we had not yet clarified in *Paladino* what procedures are required when a district court must resolve factual disputes relevant to exhaustion, the District Court did not have occasion to determine whether Rinaldi made the requisite showing of subjective deterrence. Nonetheless, the Government urges that we should affirm, rather than remand, because the record reflects that Rinaldi filed a number of grievances after the allegedly retaliatory transfer—a circumstance that the Government contends, in effect, negates subjective deterrence as a matter of law. We are not persuaded.

As the Seventh Circuit has observed, the "ability to take advantage of administrative grievances is not an 'either-or' proposition. Sometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics." *Kaba*, 458 F.3d at 685. Thus, the court concluded, it "was unrealistic to expect [the inmate] to file a grievance against the very people who were threatening retaliation and preventing him from obtaining the proper forms," and the fact that an inmate files unrelated claims "does not prove that remedies were available within the system" for purposes of exhaustion. *Id.* at 685-86. That observation holds true in this case, where Rinaldi's willingness to file grievances concerning unrelated and far less

21

inflammatory subjects like cleaning supplies is hardly dispositive of whether he was subjectively deterred from pursuing his Retaliation Request at the Institution. Indeed, the Government has not identified any subsequent grievance that can be characterized as substantially similar to his Retaliation Request.

Accordingly, we will vacate the District Court's dismissal of Rinaldi's First Amendment claim, and will remand for the District Court to consider subjective deterrence in the first instance.

### 2. *Rinaldi's Eighth Amendment Assault Claim*

Rinaldi also challenges the District Court's dismissal of his Eighth Amendment claim for failure to exhaust. As explained below, even though he did not initiate a new grievance for the assault by Cellmate #2 and raised that claim for the first time in the appeal of his original Assault Request, exhaustion was satisfied under our case law because the Regional Director denied it on the merits.[11]

---

[11] The Government's suggestion that the Assault Request was not "fully examined" on the merits, Appellee's Br. 21, is refuted by the Regional Director's decision, which addressed both assaults and concluded that the appeal was "denied" because "there is no record of [him] being assaulted by [his] previous *or current cellmate.*" JA 168 (emphasis added). As the Government acknowledges elsewhere in its brief, "denials" in contrast to "rejections," are "on the merits." Appellee's Br. 22-23.

22

In *Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000), despite the fact that the inmate had not completed a necessary step in the Department of Corrections' grievance process, we concluded that the prison had waived any exhaustion defense and "judicial consideration [wa]s open to [the inmate]" because the inmate's "allegations [had] been fully examined *on the merits* by the ultimate administrative authority," and therefore a "substantive determination [had been] made at the highest level." *Id.* at 281. Likewise, in *Spruill*, drawing on principles from habeas and administrative law, we reasoned that whether a prisoner had "properly exhausted" a claim must be determined by evaluating not only "the prisoner's compliance with the prison's administrative regulations governing inmate grievances," but also "the waiver, if any, of such regulations by prison officials." 372 F.3d at 222. Thus, even though Spruill had failed to include the name of the relevant prison official, we held that the grievance office's acknowledgment of which prison official was involved had "excused any procedural defects in Spruill's initial grievances." *Id.* at 234.

The Government contends in its briefing that our precedent was abrogated by the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006).[12] Quite the opposite. In

---

[12] The Government appears of two minds on this point, as it indicated at oral argument that it "is not taking the position that . . . *Spruill* or *Camp* are called into question by *Woodford* or *Ross*," and that if this Court "conclude[s] that the Regional Administrator did address [Rinaldi's] . . . Eighth Amendment assault claim [] on the merits that it's properly exhausted for purposes of Federal Court." Tr. of Oral Arg. 42:12-22. Having

23

*Woodford*, the Supreme Court resolved a split between those Circuits that had adopted a broader interpretation of the PLRA's exhaustion requirement and those, like ours, that had adopted a test of "proper exhaustion," meaning "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." 548 U.S. at 90 (citation omitted). The Court endorsed the latter approach— citing specifically to *Spruill* and even echoing our observation in *Spruill* that PLRA exhaustion should mirror the "proper exhaustion" requirements from both the habeas and administrative law contexts. *Id.* at 88-89.

Although *Woodford* did not specifically address whether review on the merits of an otherwise procedurally defaulted claim constitutes "proper exhaustion," the Court's reference to *Spruill* and its reliance on principles of habeas and administrative law in evaluating PLRA exhaustion support that conclusion.[13] In its habeas jurisprudence, the Court has

considered carefully whether *Woodford* and *Ross* alter our approach, we conclude they do not.

[13] Our dissenting colleague correctly observes that "the Supreme Court has not imported all [habeas and administrative law] principles" into PLRA exhaustion, and has rejected, for example, an analogy to the Antiterrorism and Effective Death Penalty Act's tolling provision. Dissent at 9 & n.6. But the Court's rejection of analogies to habeas and administrative law in rare and specific contexts only points up its reliance on them as a general matter to guide its PLRA exhaustion jurisprudence, and we see no reason to abjure that reliance here, particularly given the Court's approving citation to *Spruill*.

24

recognized an exception to the general rule of exhaustion "where the State has actually passed upon the claim," even if raised by the state court *sua sponte. Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 480 n.6 (3d Cir. 2017). In the administrative law context, it is also well settled that "when the agency in fact considers the issue on the merits, [the] general exhaustion requirement can be satisfied even if the party did not properly raise it," *Kennedy for President Comm. v. FEC*, 734 F.2d 1558, 1560 n.2 (D.C. Cir. 1984)), and as Justice Breyer expressly noted in his concurrence in *Ross*, the PLRA's exhaustion requirement "include[s] administrative law's 'well-established exceptions to exhaustion.'" *Ross*, 136 S. Ct. at 1863 (quoting *Woodford*, 548 U.S. at 103) (Breyer, J., concurring) (citation omitted)). *Woodford* thus does not require us to revisit *Camp* and *Spruill*, and, if anything, reinforces our conclusion that where a prison disregards its own procedures and rejects an inmate's otherwise procedurally defaulted complaint on the merits, the claim is "properly exhausted" under the PLRA.

To be clear, and with sensitivity to the thoughtful concerns raise by our dissenting colleague, we do not today create any "broad . . . exception" to the exhaustion requirement. *See* Dissent at 8. We simply reaffirm, as we held in *Camp*, that when an inmate's allegations "have been fully examined on the merits" and "at the highest level," they are, in fact, exhausted. 219 F.3d at 281. This holding also satisfies the "three interrelated objectives" of exhaustion: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting

barriers to frivolous prisoner lawsuits."  Dissent at 8 (quoting *Spruill*, 372 F.3d at 230).  That is, precisely because we recognize that control over the grievance process is appropriately vested in prison administrators and that such administrators are best positioned to ascertain the need for further development of the administrative record, we should not be second-guessing their decisions on the relative efficiencies of (a) rejecting a claim and requiring it to be re-initiated at the institution level, versus (b) opting to research it, to the extent needed, at the appellate level and addressing it on the merits.  And when the prison chooses the latter course, as it did here, making clear with its merits decision what the inevitable result would be of a re-initiated claim, then treating the claim as exhausted does not increase "the burden on the federal courts."  *Spruill*, 372 F.3d at 230.  It simply avoids subjecting prisoners and prison administrators alike to a futile exercise and provides judicial review of the prison's final decision on the merits.  In short, where the prison has chosen to forgo a rejection on procedural grounds and has elected to research, analyze, and deny a claim on the merits, both the purposes of exhaustion—and exhaustion itself—are satisfied.

In reaching this conclusion, we are in good company.  Other Courts of Appeals too have held that merits review satisfies exhaustion under the PLRA and that, because PLRA exhaustion turns on the remedies and grievance procedures that the particular prison has available, treating a claim as exhausted where a prison chooses not to enforce those procedures does not contravene the PLRA.  *See Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016); *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1215 (11th Cir. 2015); *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (per curiam); *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); *Reed-Bey*

26

*v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004).[14]

In sum, because Rinaldi's Assault Request was denied at the highest level on the merits and therefore was properly exhausted under the PLRA, we will vacate the District Court's dismissal of Rinaldi's Eighth Amendment claim.

## B.  Rinaldi's FTCA Claim

The District Court construed Rinaldi's claim that the Government "forc[ed] him to reside with an inmate that [the

---

[14] The Dissent argues that "most of our sister circuits to consider the issue addressed grievances the substance of which had proceeded through each step of the administrative process," Dissent at 10, and, specifically, that the Ninth Circuit "qualified its holding on this point." Dissent at 11 (citing *Reyes*, 810 F.3d at 658). But the fact that other Courts of Appeals have determined that exhaustion is satisfied when an otherwise procedurally-defaulted grievance is denied on the merits after having been adjudicated at each step of a grievance process does not speak to whether exhaustion is also satisfied when such a grievance is denied on the merits at the highest level of that grievance process. Moreover, the legal analysis underlying those decisions—namely, their focus on whether "[p]rison officials have had the opportunity to address the grievance and correct their own errors," *Reyes*, 810 F.3d at 657—applies here with equal force. Here too, the BOP had the opportunity to adjudicate Rinaldi's claim in any way it saw fit, and opted to address it on the merits rather than direct him to comply with all levels of its 4-Step process.

27

BOP] knew, or should have known, had expressed an intention to kill [him]," *Rinaldi*, 2015 WL 2131208, at \*5, as "essentially a negligence" claim under the FTCA subject to dismissal on the basis of the discretionary function exception.[15] *Id.* We will affirm.

The FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); 28 U.S.C. §§ 2671–2680. However, it excludes claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." *Id.* § 2680(a). To determine whether a claim fails within this discretionary function exception, we apply a two-prong test. *See United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Mitchell v. United States,* 225 F.3d 361, 363 (3d Cir. 2000). First, we ask whether the challenged conduct involved an "element of judgment or choice," which depends on whether there is a "federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to

---

[15] To the extent Rinaldi argues the discretionary function exception cannot apply because his allegations relate to unconstitutional acts, he fails to recognize the premise of the FTCA claim he seeks on appeal to reinstate: The FTCA only waives sovereign immunity for torts recognized under the law of the state in which the conduct was alleged to have occurred. Although Rinaldi referenced the Eighth Amendment, the District Court reasonably construed his claim as an FTCA claim, and it is that claim that Rinaldi now argues was erroneously dismissed. *See Rinaldi*, 2015 WL 2131208, at \*5.

follow." *Mitchell*, 225 F.3d at 363 (citation omitted). Second, if the act does involve judgment, we ask whether the judgment involved is "the kind that the discretionary function exception was designed to shield." *Id.* (citations omitted).

Although we have not previously addressed in a precedential opinion whether BOP housing and cellmate assignments meet this test, other Courts of Appeals have held uniformly that they do. *See Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 396–98 (6th Cir. 2004); *Santana-Rosa v. United States,* 335 F.3d 39, 43–44 (1st Cir. 2003); *Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998); *Dykstra v. U.S. Bureau of Prisons,* 140 F.3d 791, 795–96 (8th Cir. 1998); *Calderon v. United States,* 123 F.3d 947, 948–50 (7th Cir. 1997).[16]  We now join them.

Here, both prongs of the discretionary function test are satisfied.  At the first prong, housing and cellmate assignments unquestionably involve an "element of judgment or choice," *Gaubert*, 499 U.S. at 322 (citation omitted), for while BOP officials must "provide suitable quarters" and "provide for the protection, instruction, and discipline of all" of its inmates, 18 U.S.C. § 4042(a)(2)-(3), neither that provision nor any other

---

[16] *Cf. Ashford v. United States,* 511 F.3d 501, 505 (5th Cir. 2007) (observing that the discretionary function exception generally applies to cellmate assignments when an inmate can "point to no specific prison policy or regulation that constrained prison officials' judgment other than the prison's general duty to protect its prison population," but conceding the exception did not apply in that case because "there [was] a specific policy in place that constrained the decision-making ability of the prison officials").

"federal statute, regulation or policy" can be said to "specifically prescribe[] a course of action" for such assignments that BOP officials must follow. *Mitchell*, 225 F.3d at 363 (citation omitted). And at the second prong, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," *Rhodes v. Chapman*, 452 U.S. 337, 350 (1981), and "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Thus, the District Court correctly concluded that housing and cellmate assignments are "of the kind that the discretionary function exception was designed to shield." *Mitchell*, 225 F.3d at 363 (citation omitted).

## V. Conclusion

For the foregoing reasons, we will vacate and remand for further proceedings concerning Rinaldi's First and Eighth Amendment claims and will affirm the District Court's judgment in all other respects.

30

SCIRICA, *Circuit Judge*, concurring in part and dissenting in part

I join the Majority's thoughtful analysis of Rinaldi's Federal Tort Claims Act claim and exhaustion of his First Amendment claim under the Prison Litigation Reform Act (PLRA). I write separately on the PLRA's exhaustion requirement, 42 U.S.C. § 1997e(a), as it relates to Rinaldi's Eighth Amendment claim.

Rinaldi—a federal inmate—alleges that prison officials unconstitutionally retaliated against him by forcing him to cell with an inmate who had threatened to kill him. *See* U.S. Const. amends. I, VIII. Despite conceding his failure to comply with applicable administrative remedy procedures as required by § 1997e(a), Rinaldi invokes separate reasons why his First and Eighth Amendment claims may be deemed exhausted and considered by the District Court.[1] As to Rinaldi's First

---

[1] In addition to the grievances at issue in this appeal, Rinaldi asserts he filed over 50 administrative remedy requests while housed at USP-Lewisburg. Based on some of these remedy requests, Rinaldi's complaint alleged other civil rights violations related to his confinement, including that: his Fifth and Eighth Amendment rights were violated when officials denied him access to adequate recreation; the denial of his ability to worship in congregation violated his right to religious freedom; and being forced to have psychological review conducted through his cell door resulted in him being denied proper medical care and violated his right to confidentiality with his doctor.

The District Court found these claims administratively exhausted but concluded Rinaldi had failed to state claims for

1

Amendment claim, I agree with my colleagues that the serious threats of retaliation Rinaldi has alleged call into question the availability of exhaustion. But I believe the Supreme Court's jurisprudence in *Ross v. Blake*, 136 S. Ct. 1850 (2016), and *Woodford v. Ngo*, 548 U.S. 81 (2006), counsels a different result in Rinaldi's Eighth Amendment claim.

The Supreme Court has strictly interpreted § 1997e(a), and the Court's most recent analysis of exhaustion in *Ross* counsels against a broad articulation of a merits exception to proper exhaustion. I recognize the well-established exceptions to exhaustion in habeas corpus and administrative law. But in *Ross*, the Court made clear that the PLRA's statutory exhaustion provision "stands on different footing" from judge-made exhaustion doctrines. 136 S. Ct. at 1857. Looking to the history and purposes of the PLRA's statutory exhaustion requirement, I believe exhaustion under the PLRA requires the substance of a grievance be considered on the merits at each available step of the administrative review process. Because Rinaldi failed to present his Eighth Amendment claim until midway through the administrative review process, the District Court was correct to dismiss the claim on exhaustion grounds.

---

inadequate access to adequate recreation and inadequate psychological treatment. Rinaldi does not appeal that decision. Furthermore, as noted by the Majority, our decision in *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) forecloses Rinaldi's Free Exercise claim and I agree Rinaldi should not be permitted leave to amend his Religious Freedom Restoration Act claim because this request was raised for the first time in Rinaldi's Reply Brief.

**I.**

As the Majority Opinion explains, the United States Bureau of Prisons (BOP) has a multi-tiered administrative remedy program. To exhaust administrative remedies, an inmate must first file an informal remedy request through an appropriate institution staff member via a BP-8 form. *See* 28 C.F.R. § 542.13. If the inmate is not satisfied with the informal remedy response, he is required to address his complaint at the institutional level with the Warden via a BP-9. *See* § 542.14. If the inmate is dissatisfied with the Warden's response, he may then appeal to the Regional Director via a BP-10. *See* § 542.15. And if dissatisfied with the Regional Director's response, the inmate must appeal to the General Counsel via a BP-11. *See id*. Once an inmate receives a response to his appeal from the General Counsel, after filing the administrative remedy request at all levels, his administrative remedies are deemed exhausted.[2] *See id.*

Here, Rinaldi filed an informal remedy request on January 29, 2012, claiming to have been assaulted by a previous cellmate. Rinaldi requested that the institution discontinue its practice of forcing inmates to cell together regardless of compatibility because "[f]orced double celling creates a hostile environment and increases the incidence of assaults." JA 164. The informal request was denied and Rinaldi

---

[2] An exception to the initial filing requirement at the institutional level exists "[i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution." 28 C.F.R. § 542.14(d)(1). But this exception is relevant only to Rinaldi's First Amendment claim.

3

filed Request for Administrative Remedy #675165 (BP-9). This request was denied by the Warden on the grounds that "[a]ll inmates are screened for compatibility prior to placement." JA 165.

Rinaldi appealed to the Northeast Regional Office. At this stage in the institutional review process (BP-10), Rinaldi introduced a new claim that, on February 2, 2012, he was celled with an inmate who had threatened to kill him. Rinaldi framed this as evidence that the Warden's reason for denying his remedy request—that inmates are screened for compatibility—was untrue, noting he had provided his case manager with the names of other inmates he "would like to cell with." JA 167. The Regional Office denied his appeal, reasoning that inmate compatibility is considered and there was "no record of [Rinaldi] being assaulted by [his] previous or current cellmate." JA 168. Rinaldi then appealed to the General Counsel, who denied the appeal and closed the case with the code "DNY."

Thereafter, Rinaldi filed suit in federal court, proceeding *pro se*. As relevant here, Rinaldi alleged that being forced to cell with an inmate who had threatened to kill him violated his Eighth Amendment rights. The District Court dismissed the claim for Rinaldi's failure to exhaust because the BOP's regulations prohibit an inmate from raising issues for the first time on appeal. *See* 28 C.F.R. § 542.15(b)(2). Rinaldi was permitted 30 days to file an amended complaint but instead filed a motion for reconsideration, which the court denied. Upon that denial, Rinaldi filed this timely appeal.

Now represented by counsel, Rinaldi concedes procedural error because he never presented his current claim

4

to the institution (BP-8 and BP-9 levels).[3] Indeed, Rinaldi has never claimed that he is pursuing on appeal the claim he raised at all levels of administrative review, namely that the institution should screen for compatibility because forced double celling increases the likelihood of assaults. Now, however, Rinaldi alleges that his Eighth Amendment rights were violated when, on February 2, 2012, he was celled with an inmate who had threatened to kill him and appeals the District Court's decision that this specific allegation was not exhausted. Rinaldi argues the District Court erred in dismissing this claim because the Regional Director's response (BP-10) addressed on the merits both the allegation he was assaulted by a previous cellmate and the allegation he was threatened by his subsequent cellmate.

## II.

My colleagues conclude Rinaldi's Eighth Amendment claim was exhausted because, even though he raised its factual predicate for the first time midway through the grievance process, his grievance was denied on the merits at the highest level. I disagree. The Supreme Court's most recent analysis of the PLRA's mandatory exhaustion requirement, in *Ross*, did not decide the question we face today. But *Ross* did signal the Court's continued reluctance to tolerate broad exceptions to the PLRA's statutory exhaustion requirement.

Moreover, the Supreme Court explained in *Ross* that, under the PLRA, the question of exhaustion "in all cases is one

---

[3] As noted, at the BP-8 and BP-9 levels, review takes place within the specific institution. At the BP-10 and BP-11 levels, review takes place at the regional and national level.

5

of statutory construction." 136 S. Ct. at 1858 n.2. The statute's origins counsel that the substance of a grievance must be addressed at every available level of the administrative review process. So too does the Supreme Court's construction of § 1997e(a)'s text and purpose. *Woodford* drew on principles of habeas and administrative law, but, as described below, this does not support a broad interpretation of a merits exception to proper exhaustion.[4]

**A.**

Central to the PLRA's effort to "reduce the quantity and improve the quality of prisoner suits" was its exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Applicable "irrespective of the forms of relief sought and offered through administrative avenues," *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001), the PLRA's exhaustion requirement was designed to strengthen the "weak" exhaustion provision of its predecessor—the Civil Rights of Institutionalized Persons Act (CRIPA), *see Porter*, 534 U.S. at 523; *see also Ross*, 136 S. Ct. at 1857–58 (discussing how "the history of the PLRA underscores the mandatory nature of its exhaustion regime"). The Supreme Court has "reject[ed] every attempt to deviate . . . from [§ 1997e(a)'s] textual mandate." *Ross*, 136 S. Ct. at 1857.

---

[4] *Woodford's* reference to our decision in *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), does not support the proposition that exhaustion is satisfied where a grievance is addressed on the merits only at the highest level of review. The Court was citing our first holding in *Spruill*—that the PLRA's exhaustion provision included a procedural default component. *See Woodford*, 548 U.S. at 87 (citing *Spruill*, 372 F.3d at 230).

Most recently, in *Ross*, the Court considered a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856. Acting on the premise that the PLRA's exhaustion requirement was "not absolute," the Fourth Circuit found a prisoner's failure to comply with applicable procedural requirements could be excused where the prisoner reasonably believed administrative remedies were exhausted. *Id.* The Court rejected the special circumstances exception, explaining that such an approach, "if applied broadly, would resurrect CRIPA's scheme, in which a court could look to all the particulars of a case to decide whether to excuse a failure to exhaust available remedies." *Id.* at 1858.

In rejecting the special circumstances test, the Court clarified that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* at 1857. Thus, while "an exhaustion provision with a different text and history from § 1997e(a) might be best read to give judges the leeway to create exceptions or to itself incorporate standard administrative-law exceptions," *id.* at 1858 n.2, courts must look only to the statute, "using ordinary interpretive techniques," *id.*, when considering whether a grievance has been exhausted. Looking to the PLRA's history, it appears applying broad exceptions from habeas and administrative law to § 1997e(a) would be contrary to the "invigorated" exhaustion scheme, *see Porter*, 534 U.S. at 524, created by Congress and enforced by Supreme Court precedent.

**B.**

7

Requiring a decision on the merits at each available stage of the administrative process is, moreover, consistent with how the Supreme Court has construed § 1997e(a)'s text and the purposes of the PLRA's exhaustion provision.

In *Woodford*, the Court interpreted § 1997e(a) to require "proper exhaustion." 548 U.S. at 84. This "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 90 (internal quotations marks and citation omitted). The Court explained that "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at 95.

This construction would appear to be inconsistent with a broad merits exception. This is not a case where the grievance bears some procedural defect, but the substance of the grievance is nevertheless considered at all administrative steps (for example, the initial filing was untimely or an appeal deadline was missed but these errors were overlooked). In such a case, the prisoner has used all steps the agency holds out, complying with the agency's "critical rules," and the administrative remedy system functions effectively as if no defect were present. But here, Rinaldi raised the factual basis for his current Eighth Amendment claim only midway through the grievance process.

As for the PLRA, we have described the "three interrelated objectives" of exhaustion as follows: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an

8

administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004). The Supreme Court has reasoned, in *Woodford*, that exhaustion gives the agency "an opportunity to correct its own mistakes with respect to the programs it administers," 548 U.S. at 89, and promotes efficiency—"[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction," *id.* at 95. These purposes are best served by requiring that the substance of the grievance be addressed at every available stage of the administrative process.

Take, for example, the goal of developing an administrative record. If the procedural defect is that an inmate interjects a claim at the final stage of the BOP's remedy process, then a denial with the code "DNY" would suffice to have exhausted that claim on the merits.[5] In this scenario there is no creation of an administrative record. The administrative record is also not fully developed where, as here, a claim is interjected midway through the BOP's review process. As for compliance with critical procedural rules, there is less incentive for a prisoner to pursue separate grievances through all stages of review if a claim (or, as here, facts supporting a different claim) can instead potentially be added at the final hurdle. Finally, requiring a grievance to have been considered on the merits at all available stages of review makes it more

---

[5] The status codes used by the BOP relating to administrative remedies distinguish between appeals that are closed on the merits and those that are rejected.

9

likely a particular institution will have the full opportunity to address and correct a grievance because the institution itself will be put on notice first. The first step of the BOP's remedy program is designed to allow staff an opportunity to "informally resolve the issue *before* an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a) (emphasis added).[6]

## C.

Analogies to well-established exceptions in habeas and administrative law are useful. But the Supreme Court has not

---

[6] The Majority asserts its approach "avoids subjecting prisoners and prison administrators alike to a futile exercise and provides judicial review of the prison's final decision on the merits." Maj. Op. at 24. But the PLRA was enacted to "improve the quality of prisoner suits," *Porter*, 534 U.S. at 524, and its primary vehicle for doing so was to require proper exhaustion, *see Woodford*, 548 U.S. at 90.

As Rinaldi concedes, his Eighth Amendment claim should have been filed separately under the BOP's regulations because it involves a separate issue. *See* 28 C.F.R. 542.14(c)(2); 542.15(b)(2). Indeed, Rinaldi never presented his Eighth Amendment claim at the institutional level—that is, to the prison officials at Lewisburg. When a grievance such as Rinaldi's is not presented at the institutional level, prison officials are stripped of the opportunity to address prisoner grievances within their institution. And we—as an eventual reviewing court—lose the benefit of the expertise and specialized knowledge possessed by those who staff the institution. Such an approach does not serve to "improve the quality" of suits before us.

imported all of these principles into the PLRA's exhaustion regime.[7] Further still, these exceptions are judge-made.[8] To the extent they apply in the PLRA context, *Ross* requires consideration of § 1997e(a)'s origins, text, and purpose. As noted, I believe these considerations counsel that the substance of a grievance must have been considered on the merits at each available level of administrative review.

---

[7] For example, in *Woodford*, the Court rejected a comparison between the Antiterrorism and Effective Death Penalty Act's (AEDPA) tolling provision and the PLRA, noting "the AEDPA and PLRA provisions deal with separate issues: tolling in the case of the AEDPA and exhaustion in the case of the PLRA," 548 U.S. at 100, and further stated it was "unrealistic to infer from the wording of the PLRA provision that Congress framed and adopted that provision with habeas law and not administrative law in mind," *id.* at 102.

[8] As we noted in *Spruill*, "the Supreme Court has consistently located the procedural default component of federal habeas law in the independent and adequate state ground doctrine, a doctrine that, in the habeas context at least, is grounded in concerns of comity and federalism." 372 F.3d at 229 (internal quotation marks and citations omitted). These concerns apply "with greater force to defaults in state *judicial* proceedings than . . . to defaults in state *administrative* proceedings," *id.* at 229, and this is even more true in the PLRA context where the administrative proceedings are federal.

In the administrative law context, the D.C. Circuit has explained exhaustion is a "judicially-created doctrine . . . which permits courts some discretion to waive exhaustion." *Washington Ass'n for Television & Children v. F.C.C.*, 712 F.2d 677, 682 (D.C. Cir. 1983).

**III.**

Notably, most of our sister circuits to consider the issue prior to *Ross* addressed grievances the substance of which had proceeded through each step of the administrative process. *See, e.g.*, *Hill v. Curcione*, 657 F.3d 116, 125 (2d Cir. 2011) (concerning a late initial filing accepted and decided on the merits); *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) ("Maddox's grievance was rejected on the merits at every stage of review without any indication from prison officials that it was procedurally deficient."); *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) (addressing an inmate's failure to name a single individual in his initial grievance); *Ross v. Cty. of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004) ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper.").[9] This is also true of our decision in *Spruill*. *See* 372 F.3d at 232 (focusing on the fact that the prison's initial grievance review cured the inmate's procedural defect).

In fact, the Ninth Circuit in *Reyes v. Smith* expressly qualified its holding on this point: "we hold that a prisoner exhausts 'such administrative remedies as are available,' under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the *grievance at each available step of the administrative process*." 810 F.3d 654, 658 (9th Cir.

---

[9] The one exception is *Whatley v. Warden, Ware State Prison*, but even in *Whatley*, the inmate's first informal grievance referred back to an earlier grievance containing the substantive allegations that later formed the basis of his appeals and complaint. *See* 802 F.3d 1205, 1210 (11th Cir. 2015).

12

2016) (internal citation omitted) (emphasis added). The Eighth Circuit also based its holding in *Hammett v. Cofield* on the fact that the inmate had "pursued the[] grievances through all three steps of the process" and his grievance appeals were denied on the merits. 681 F.3d 945, 948 (8th Cir. 2012). The court noted that when a grievance has proceeded through all steps, notwithstanding an initial procedural error, "[a] complete administrative record exists, and a reviewing court will have the benefit of the agency's institutional perspective." *Id.* at 947–48. This reasoning does not hold true where a claim has been added midway through the remedy process.

## IV.

Exhaustion provisions, like § 1997e(a), are designed "to give the agency a fair and full opportunity to adjudicate [party] claims." *Woodford*, 548 U.S. at 90. In the PLRA context, I believe this requires the substance of a grievance to have been considered at every level of available administrative review. For this reason, Rinaldi did not exhaust his Eighth Amendment claim and I respectfully dissent from that holding of the Majority Opinion.

13